PACIFIC EMPLOYERS INS. CO. v. PILLSBURY, Deputy Compensation Com'r, et al.

No. 9958.

Circuit Court of Appeals, Ninth Circuit.

July 15, 1942.

---

[1] The conviction and sentence under indictment numbered 3803.

W. N. Mullen, of San Francisco, Cal., for appellants.

Frank J. Hennessy, U. S. Atty., R. B. McMillan and James T. Davis, Asst. U. S. Attys., all of San Francisco, Cal., for appellee Warren H. Pillsbury.

Before GARRECHT, HANEY, and HEALY, Circuit Judges.

GARRECHT, Circuit Judge.

This appeal is taken from a decree of the District Court of the United States for the Northern District of California, Southern Division, affirming an award made under the Longshoremen's and Harbor Workers' Compensation Act, c. 509, 44 Stat. 1424, 33 U.S.C.A. § 901 et seq., to David E. Slawson by Warren H. Pillsbury, Deputy Commissioner of the United States Employees' Compensation Commission for the 13th District, and dismissing a libel brought by appellant Bay Transport Company and its insurance carrier, appellant Pacific Employers Insurance Company, which sought to enjoin the compensation order and award on the ground that claimant Slawson was a "member of a crew", within the meaning of that expression as used in Section 3(a) (1) of the Act. That section provides that no compensation shall be payable in respect of the disability or death of a "member of a crew of any vessel".

As to the facts of this suit there is little or no dispute. The following statement of the case is taken from the evidence, which was submitted at a hearing before the deputy commissioner:

The S. S. "Crockett", a licensed vessel of more than eighteen tons net, operated only upon San Francisco Bay and its tributaries, carrying sugar from Crockett to San Francisco and other points on the Bay, some of which sugar was destined for other states in the Union and for foreign countries. It carried a master, a mate, two engineers, two firemen, an oiler, and from twenty-five to thirty-five "deckhands" and "stevedores".

The claimant, David E. Slawson, was employed at a monthly wage as a deckhand aboard the "Crockett". His work required that he live aboard boat for five days out of each week, and he could not depart from

the boat without permission of the officer in charge. During most of his working time he was storing sugar on the boat or assisting in the discharge of such cargo, the boat being tied to a dock while such operations were carried on; and he helped to sweep up any sugar that spilled on the decks. To a slight extent he handled the lines in tying and untying the vessel, and also assisted in laying out and bringing in the cargo plank. He and others aboard were required to respond to lifeboat drill, and in the event of an emergency or failure of the steering apparatus, he could be called upon to hold the wheel. Ordinarily, though, he slept while the boat was in motion. When it was tied up and he was not otherwise engaged, he would do some painting and other maintenance work. He had no duties to perform on shore, and all his orders were taken from the mate or the captain.

Slawson held a membership in the Deckhands' Union; had a "Seaman's Certificate of Identification" and a "Certificate of Service", but did not have an able seaman's papers.

In the course of loading sugar aboard the "Crockett" Slawson was injured, and thereafter filed a claim for compensation as provided for by the Longshoremen's and Harbor Workers' Compensation Act. The deputy commissioner found that claimant "had no duties to perform while the vessel was in motion and had no duties referable to its navigation" and therefore "was essentially a harbor worker and longshoreman, and not a member of a crew of a vessel as said term is used in said Act".

The appellants contend here that "it should have been found that Mr. Slawson, while it is true was carried principally to help load and unload the vessel, did, contrary to the Deputy Commissioner's finding, have duties to perform referable to the navigation of the vessel and that by being carried to load and unload the vessel he was carrying out its very purpose in navigation". They make the further argument that "The handling of lines and gang planks, to say nothing of his efforts being directed to accomplish the chief purpose of the use of the vessel, namely, the carrying of freight, certainly made his employment maritime and in direct connection with the navigation of the vessel. The fact that he also had to aid in fire and lifeboat drills, no matter the hour, and while the boat was in motion, and had to clean it and sweep it while in motion, certainly does not support the finding or conclusion of the Court below or the deputy commissioner that Mr. Slawson had no duties to perform referable to the navigation of the vessel."

■ The Supreme Court of the United States in the case of South Chicago Coal & Dock Co. v. Bassett, 309 U.S. 251, 60 S.Ct. 544, 84 L.Ed. 732, was concerned with the status of an employee on a vessel which operated in the Calumet River and Harbor and in the Indiana River and Harbor. The vessel was used for fueling steamboats and other marine equipment. The opinion states (309 U.S. at page 255, 60 S.Ct. at page 546) that the Circuit Court of Appeals, 7 Cir., 104 F.2d 522, in holding that the employee was not a member of a crew, "thought it significant that his only duty relating to navigation was the incidental task of throwing the ship's line; that his primary duty was to free the coal if it stuck in the hopper while being discharged into the fueled vessel while both boats were at rest; that he had no duties while the boat was in motion; that he was paid an hourly wage; that he had no 'articles'; that he slept at home and boarded off ship; that he was called very early in the morning each day as he was wanted; that while he had worked only three weeks, and it might have been possible that he would have been retained for years to come, his employment was somewhat akin to temporary employment". The Supreme Court affirmed the holding of the Circuit Court of Appeals, but in doing so, emphasized the fact that the employee's primary duty was to facilitate the flow of coal to the vessel being fueled, both vessels being stationary at the time, and that the work was of the sort performed by longshoremen and harbor workers. The opinion declares (309 U.S. at page 260, 60 S.Ct. at page 549, 84 L.Ed. 732) that the question of a worker's status under the Act "concerns his actual duties", and adds that the purpose of the statute was to provide compensation for a class of employees whose "service was that of laborers, of the sort performed by longshoremen and harbor workers and thus distinguished from those employees on the vessel who are naturally and primarily on board to aid in her navigation".

■ In the very recent case of Puget Sound Freight Lines v. Marshall, 9 Cir., 125 F.2d 876, 878, this court was called upon to decide whether or not one Jondro was a "member of a crew", within the intendment of the Act. He had been employed to do loading and unloading work aboard a vessel

which carried cargo to and from various ports on Puget Sound. The nature of his work required that he travel with the vessel, on board which he was provided with meals and sleeping quarters. He lived ashore for an average of about four days out of each month, and was paid on a monthly basis. His duties included putting the cargo plank out upon arrival at a dock and taking it in upon departure. His sole duties were in relation to loading and discharging cargo, although on occasion he might handle a line as an incident to his main work, or might take the wheel occasionally, but was not required to do so. He had no duties while the boat was underway, and could do anything he pleased during that time. We held that Jondro was not a "member of a crew". The following quotation is from the opinion (125 F.2d at page 879):

" * * * The distinction between a longshoreman and a crew-member seems to hinge upon whether or not the employee is 'naturally and primarily on board (the vessel) to aid in her navigation'. The work done by the claimant had no more relation to navigation than does that performed by a regular longshoreman engaged at a port to assist in loading or discharging the cargo of a boat. As was so well stated in Carumbo v. Cape Cod S. S. Co., 1 Cir., 123 F.2d 991, 995, 'The requirements that the ship be in navigation; that there be a more or less permanent connection with the ship; and that the worker be aboard primarily to aid in navigation appear to us to be the essential and decisive elements of the definition of a "member of a crew".' "

At this point we may remark that a review of the many cases cited by the litigants here would unnecessarily extend this opinion and would be of no great assistance; for as stated in the Puget Sound Freight Lines case, supra, 125 F.2d 876, 878, each claimant's classification as a crew-member or harbor worker "must be determined by the circumstances of his own, individual case" and "the deputy commissioner's determination of the employee's status [is] conclusive and not subject to judicial review if supported by substantial evidence".

From a consideration of claimant Slawson's "primary" and "actual duties" aboard the "Crockett" it is at once apparent that the reasoning of the opinions rendered in the South Chicago and Puget Sound Freight Lines cases, supra, applies to, and governs the instant case; and we may state, without rehearsal of the facts, that there is substantial evidence to support the finding of the deputy commissioner that claimant was not a "member of a crew", but rather a harbor worker or longshoreman.

As hereinbefore noted, the appellants, in support of their contention that claimant was a "member of a crew" emphasize that he handled lines and gangplanks, swept and cleaned the decks, participated in lifeboat drills, and could be required to take the wheel in the event of an emergency. We mention here that the record does not support appellants' statement (hereinbefore quoted) that Slawson "had to clean [the boat] and sweep it while *in motion*" (emphasis supplied). The implication of that statement is that it was his duty to swab the decks regularly and whenever they needed it, as would be the case with a common sailor. Now, Slawson did testify that he helped sweep up the sugar which spilled on the decks, but there is nothing in the evidence to show that this was done after the boat was in motion. However, his testimony to the effect that he was to do his sleeping while the vessel was moving between ports and that it was his "privilege" to sleep all the time that the boat was in motion (save, of course, in emergencies), was uncontradicted. In any event, these activities were merely incidental to his principal duties; and, in the words of the lower court, "these secondary conditions of employment do not offset the primary purpose of his contract of hire, which was to load and unload cargo. Under the 'duties' test, claimant was not a member of the crew". The evidence shows that the loading and unloading operations, to assist in which was claimant's primary duty, were performed while the boat was in port.

Appellants make mention of the fact that claimant was a *deckhand,* and also that he showed that he himself "was definitely of the opinion he was a member of the crew and not entitled to benefits under the Act" by "settling under the Jones Act, 46 U.S.C.A. § 688, and later filing suit as a seaman, disregarding the release". However, the particular appellation used to designate the worker is not conclusive upon the deputy commissioner; it is the nature of his work which determines whether his status is such that he comes within the protection afforded by the Act. South Chicago Coal & Dock Co. v. Bassett, supra, 309 U.S. 251, 260, 60 S.Ct. 544, 84 L.Ed. 732. And the same may be said with regard to the claimant's own opinion as to his classifica-

tion. The fact that he had given a release under the Jones Act and had accepted benefit payments from appellants is of no consequence here. Section 915(b) of 33 U.S.C.A. provides that an employee cannot agree to waive his rights under the Act; and there is nothing in this case giving rise to an estoppel, for the appellants were not misled to their detriment, and a credit for the amount of the benefit payments already paid to claimant was allowed by the deputy commissioner against the award made under the Act.

Affirmed.