[L. A. No. 18927. In Bank. June 2, 1944.]

OCCIDENTAL INDEMNITY COMPANY (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and STEVE RULJANOVICH, Respondents.

Henry E. Kappler for Petitioner.

Everett A. Corten and Fred Goldsworthy for Respondents.

CARTER, J.—Petitioner, the insurance carrier of the owners and operators of a fishing boat named "Betsy Ross,"

seeks a review of an award of the Industrial Accident Commission to Steve Ruljanovich, a fisherman-seaman employee of the owners, for an injury received in the course of his employment under the Workmen's Compensation Law of this state.

The facts are not disputed. On May 4, 1942, Ruljanovich was in the employ of the owners and operators of a fishing vessel named "Betsy Ross," as a seaman fisherman when he received an injury arising out of and in the course of his employment. The day before the accident he had been employed by the owners of the boat as a member of the crew to engage in fishing off the shores of California. On the day of the injury the boat was in the Los Angeles harbor and Ruljanovich was assisting in preparing it for the fishing expedition. At his employer's request he went to a warehouse on the shore to obtain a net to be used in fishing and while there received the injury mentioned. It was not until some time later that the boat left on the expedition.

The commission found that Ruljanovich was injured while in the course of his employment as a seaman fisherman and, in support of its claim of jurisdiction in the matter, that the employee was not at the time of his injury engaged in work in connection with his occupation as seaman, but that the injury occurred within the boundaries of the State of California and not on the vessel or navigable waters.

On the same date that he filed his application for compensation with the commission, Ruljanovich instituted a libel in the United States District Court against the vessel and her master claiming wages, maintenance and cure pursuant to maritime law for the injury suffered. After the commission had made its award and on March 17, 1943, Ruljanovich amended his libel by naming the owners of the vessel in addition to the master and claiming damages for the alleged negligence of the owners in connection with his injury pursuant to the Jones Act (46 U.S.C.A. § 688), in addition to the claim for maintenance and cure. The libel was tried in the federal court and ultimately resulted in a denial of damages under the Jones Act because of lack of proof of negligence; however, a judgment for wages, maintenance and cure was given.

Petitioner contends that the Industrial Accident Commission did not have jurisdiction of the case; that exclusive jurisdiction rested in maritime law and the forums appropriately exercising that jurisdiction.

There are various remedies in the maritime law of which a seaman may avail himself when he suffers injuries arising out of his service on a ship. For present purposes, two will be mentioned. First, is the ancient liability imposed by admiralty law upon shipowners for maintenance and cure including wages of seamen becoming ill or injured during the period of their service. (*Aguilar* v. *Standard Oil Co.*, 318 U.S. 724 [63 S.Ct. 930, 87 L.Ed. 1107]; *O'Donnell* v. *Great Lakes etc. Co.*, 318 U.S. 36 [63 S.Ct. 488, 87 L.Ed. 596]; *Calmar S. S. Corp.* v. *Taylor*, 303 U.S. 525 [58 S.Ct. 651, 82 L.Ed. 993]; *The Osceola*, 189 U.S. 158 [23 S.Ct. 483, 47 L.Ed. 760]; 48 Am.Jur., Shipping, § 167.) That liability is not predicated upon the fault or negligence of the ship-owner, and negligence or acts short of culpable misconduct on the seaman's part will not prevent recovery. (*Aguilar* v. *Standard Oil Co., supra.*) Second, a seaman suffering personal injury in the course of his employment may, at his election, maintain an action at law for damages and in such action the Federal Employers' Liability Act (45 U.S.C.A. §§ 51-60) applies. (Jones Act, 46 U.S.C.A. § 688.) There-under the negligence of the employer, its agents or employees, must be established. (*De Zon* v. *American President Lines*, 318 U.S. 660 [63 S.Ct. 814, 87 L.Ed. 1065].) The source of the congressional power in the enactment of the Jones Act is the power to regulate interstate commerce (U. S. Const., art. I, § 8, cl. 3) and its power to make laws necessary and proper to carry into execution powers vested by the Constitution in the government or any department of it (U. S. Const., art. I, § 8, cl. 18) including the judicial power which extends "to all cases of admiralty and maritime jurisdiction." (U. S. Const., art. III, § 2; *O'Donnell* v. *Great Lakes etc. Co.*, 318 U.S. 36 [63 S.Ct. 488, 87 L.Ed. 596].)

The two foregoing remedies are each independent and cumulative of the other, and may be tried in the state or federal courts where the action is in personam. (*Garrett* v. *Moore-McCormack Co.*, 317 U.S. 239 [63 S.Ct. 246, 87 L.Ed. 239]; *Pacific S. S. Co.* v. *Peterson*, 278 U.S. 130 [49 S.Ct. 75, 73 L.Ed. 220].)

Manifestly, the Industrial Accident Commission is not a court of the state which may give remedies under either the Jones Act or the maritime law for maintenance and cure. Its sole power is to apply the Workmen's Compensation Law as

set forth in the Constitution and Labor Code. (Cal. Const., art. XX, § 21; Lab. Code, § 3201 et seq.)

Hence, the essential question is whether or not the remedies provided by the Workmen's Compensation Law are available concurrently with or to the exclusion of the remedies under the Jones Act and maritime law.

The leading case on the question of the applicability of the maritime law rather than state workmen's compensation laws is *Southern Pacific Co.* v. *Jensen*, 244 U.S. 205 [37 S.Ct. 524, 61 L.Ed. 1086]. That decision was rendered before the passage of the Jones Act or the Longshoremen's & Harbor Workers' Compensation Act (33 U.S.C.A. § 901 et seq.) In the Jensen case a stevedore was injured while working on board a ship unloading it at a wharf in navigable waters. He was not a member of the crew. The court held that the general body of maritime law as accepted by the federal courts was paramount; that the states may not change, modify or affect it and "no such (state) legislation is valid if it contravenes the essential purpose expressed by an act of Congress or works material prejudice to the characteristic features of the general maritime law or interferes with the proper harmony and uniformity of that law in its international and interstate relations," and that the state workmen's compensation laws could not be constitutionally applied to the injured employee because the ship was in navigable waters while being unloaded and the employment and the injuries were maritime. Although that case has been the subject of heated controversy both in the courts and among legal writers (see 38 Yale Law Journal 472), it has not been overruled; it has been recognized as an authority with the possible limitations presently discussed in the recent cases of *Norton* v. *Warner Co.*, 321 U.S. 565 [64 S.Ct. 747, 88 L.Ed. ——]; and *Davis* v. *Department of Labor*, 317 U.S. 249 [63 S.Ct. 225, 87 L.Ed. 246]). The constitutional aspects of that principle were further vitalized when the court declared unconstitutional congressional acts aimed at giving harbor workers the right to remedies under the state workmen's compensation laws. (See *Knickerbocker Ice Co.* v. *Stewart*, 253 U.S. 149 [40 S.Ct. 438, 64 L.Ed. 834, 11 A.L.R. 1145]; *Washington* v. *W. C. Dawson & Co.*, 264 U.S. 219 [44 S.Ct. 302, 68 L.Ed. 646].) In commenting upon the rule announced in

the Jensen case the Supreme Court of the United States stated in *Davis* v. *Department of Labor, supra,* 252, 253:

"When a state could, and when it could not, grant protection under a compensation act was left as a perplexing problem, for it was held 'difficult, if not impossible' to define this boundary with exactness."

"This Court has been unable to give any guiding, definite rule to determine the extent of state power in advance of litigation, and has held that the margins of state authority must 'be determined in view of surrounding circumstances as cases arise.'" However, it recognized in discussing whether the Longshoremen's & Harbor Workers' Compensation Act, *supra,* applied, that a "shadowy" area existed where state law could provide protection. It states: "But the line separating the scope of the two (state and federal law) being undefined and undefinable with exact precision, marginal employment may, by reason of particular facts, fall on either side." And at page 256:

"There is, in the light of the cases referred to, clearly a twilight zone in which the employees must have their rights determined case by case, and in which particular facts and circumstances are vital elements. That zone includes persons such as the decedent who are, as a matter of actual administration, in fact protected under the state compensation act." Likewise, in case of seamen it should logically follow under the doctrine of the Jensen case that the remedies provided by the Jones Act or the maritime law of cure and maintenance are exclusive of state laws with the qualification that there may be borderline cases where that is not true and that each case must depend upon its particular circumstances. The reference in the Jones Act to a seaman having an election to proceed under the Jones Act refers not to an election between state and maritime law but rather as to alternatives accorded by the maritime law as modified. (*Panama R. R. Co.* v. *Johnson,* 264 U.S. 375 [44 S.Ct. 391, 68 L.Ed. 748].) The remedy under the Jones Act is exclusive of state laws. (*Panama R. R. Co.* v. *Johnson, supra; Northern Coal etc. Co.* v. *Strand,* 278 U.S. 142 [49 S.Ct. 88, 73 L.Ed. 232]; *Lindgren* v. *United States,* 281 U.S. 38 [50 S.Ct. 207, 74 L.Ed. 686]; see, *Garrett* v. *Moore-McCormack Co.,* 317 U.S. 239 [63 S.Ct. 246, 87 L.Ed. 239]) and supersedes the operation of state workmen's compensation laws. (*Northern Coal etc. Co.* v. *Strand, supra.*)

In other fields, for illustration, injury to railway employees, it has been consistently held that the remedy given by the Federal Employers' Liability Act (45 U.S.C.A. §§ 51-60) is exclusive of rights and remedies under state workmen's compensation laws; that act extends to all railway employees, as expressed in its 1939 amendment, "whose duties as such employee shall be the furtherance of interstate or foreign commerce; or shall, in any way directly or closely and substantially, affect such commerce as above set forth shall, for the purposes of this chapter, be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this chapter." (45 U.S.C.A. § 51.) (*New York Central R. R.* v. *Winfield,* 244 U.S. 147 [37 S.Ct. 546, 61 L.Ed. 1045]; *Erie R. R. Co.* v. *Winfield,* 244 U.S. 170 [37 S.Ct. 556, 61 L.Ed. 1057]; see *Southern Pac. Co.* v. *Industrial Acc. Com.,* 19 Cal.2d 271 [120 P.2d 880]; 35 Am. Jur. Master & Servant, § 398.) It will be recalled that the Jones Act makes applicable to seamen the provisions of the Federal Employers' Liability Act.

From the foregoing it remains to be determined whether the facts of the instant case bring the employee within the exclusive jurisdiction of the maritime law or the state Workmen's Compensation Law or in the twilight zone mentioned in *Davis* v. *Department of Labor, supra;* and in so doing we are not aided by the discussion in the Davis case of the presumption of the correctness of a determination by the state Industrial Accident Commission that it had jurisdiction inasmuch as both it and the federal court have assumed jurisdiction. The general tests advanced for the determination of that question appear to be that to exclude the state law there must appear to be an impairment of the uniformity of operation of the maritime laws stated in the foregoing excerpt from the Jensen case, and with reference to employees other than seamen, the services performed must have a relation to commerce and navigation. (See *State Industrial Commission* v. *Nordenholt Co.,* 259 U.S. 263 [42 S.Ct. 473, 66 L.Ed. 933]; *Grant Smith-Porter Ship Co.* v. *Rohde,* 257 U.S. 469 [42 S. Ct. 157, 66 L.Ed. 321]; *Millers' Indem. Underwriters* v. *Braud,* 270 U.S. 59 [46 S.Ct. 194, 70 L.Ed. 470]; *Alaska Packers Assn.* v. *Industrial Acc. Com.,* 276 U.S. 467 [48 S.Ct. 346, 72 L.Ed. 656].)

Seamen have long been the wards of admiralty and a sub-

ject of special care under the maritime law. They are definitely allied with maritime law and their treatment is a matter peculiarly within the rule of uniformity of the maritime law. For those reasons they may be said to be in a different category from harbor workers and longshoremen in respect to determining the extent that the maritime law is paramount. (See *O'Donnell* v. *Great Lakes etc. Co., supra,* p. 43.) Hence, the most recent decisions of the United States Supreme Court have determined that they are under the wing of maritime law even though the injury occurs while the seaman is on land. (In *Aguilar* v. *Standard Oil Co.,* 318 U.S. 724 [63 S.Ct. 930, 87 L.Ed. 1107], the question involved was ''whether a shipowner is liable for wages and maintenance and cure to a seaman who, having left his vessel on authorized shore leave, is injured while traversing the only available route between the moored ship and a public street. The injury in No. 582 occurred while the seaman was departing for his leave. That in No. 454 occurred while he was returning.'' It was held that the maritime right of maintenance and cure applied, the test conceded by the parties to be whether the injury occurred while the seaman was ''in the service of the ship.'' The right to recover for maintenance and cure is broader than the right to compensation under workmen's compensation laws. The court said at page 732:

''For that reason, among others, his employer's responsibility for maintenance and cure extends beyond injuries sustained because of, or while engaged in, activities required by his employment. In this respect it is a broader liability than that imposed by modern workmen's compensation statutes. Appropriately it covers all injuries and ailments incurred without misconduct on the seaman's part amounting to ground for forfeiture, at least while he is on the ship, 'subject to the call of duty as a seaman, and earning wages as such.' . . . .

''When the seaman's duties carry him ashore, the shipowner's obligation is neither terminated nor narrowed. When he leaves the ship contrary to orders, however, the owner's duty is ended. Between these extremes are the instant cases, raising for the first time here the question of the existence and scope of the shipowner's duty when the seaman is injured while on shore leave but without specific chore for the ship. Liability in that circumstance was obscured in the first maritime codes, and although early suggested has been recognized only implic-

itly in lower federal courts. Very recently it has been explicity denied in several district courts.

"We think that the principles governing shipboard injuries apply to the facts presented by these cases. To relieve the shipowner of his obligation in the case of injuries incurred on shore leave would cast upon the seaman hazards encountered only by reason of the voyage. The assumption is hardly sound that the normal uses and purposes of shore leave are 'exclusively personal' and have no relation to the vessel's business. Men cannot live for long cooped up aboard ship, without substantial impairment of their efficiency, if not also serious danger to discipline. . . . .

"It was from considerations of exactly this character that the liability for maintenance and cure arose. From them, likewise, its legal incidents were derived. The shipowner owes the protection regardless of whether he is at fault; the seaman's fault, unless gross, cannot defeat it; unlike the statutory liability of employers on land, it is not limited to strictly occupational hazards or to injuries which have an immediate causal connection with an act of labor. An obligation which thus originated and was shaped in response to the needs of seamen for protection from the hazards and peculiarities of marine employment should not be narrowed to exclude from its scope characteristic and essential elements of that work. And, indeed, no decision has been found which so narrows the shipowner's parallel obligation in the case of sickness or disease. . . . .

"There is strong ground, therefore, for regarding the right to maintenance and cure as covering injuries received without misconduct while on shore leave. Certainly the nature and foundations of the liability require that it be not narrowly confined or whittled down by restrictive and artificial distinctions defeating its broad and beneficial purposes. If leeway is to be given in either direction, all the considerations which brought the liability into being dictate it should be in the sailor's behalf. In this view, the nature and purposes of the liability do not permit distinctions which allow recovery when the seaman becomes ill or is injured while idle aboard, . . . . or when doing some minor errand for the ship ashore, . . . . but deny it when he falls from the ladder or gangplank as he leaves the vessel on shore leave, . . . . Such refinements

cut the heart from a protection to which they are wholly foreign in aim and effect. The sailor departing for or returning from shore leave is, sensibly, no more beyond the broad protection of his right to maintenance and cure than is the seaman quitting the ship on being discharged or boarding it on first reporting for duty.'' In *O'Donnell* v. *Great Lakes etc. Co.,* 318 U.S. 36 [63 S.Ct. 488, 87 L.Ed. 596], a seaman who was injured while he was ashore to assist in repairing the land end of a pipe that was being used to unload the ship, was held to be within the protection of the Jones Act. The Federal District Court had made an award for maintenance and cure but dismissed the claim for damages under the Jones Act. The Circuit Court of Appeals came to the same conclusion. (*O'Donnell* v. *Great Lakes etc. Co.,* 127 F.2d 901.) The court concluded that recovery could be had under both and treated the ''course of employment'' requirement in the Jones Act and ''in the service of the ship'' under the maintenance and cure, as the same. It said at page 41:

''As we have said, the maritime law, as recognized in the federal courts, has not in general allowed recovery for personal injuries occurring on land. *But there is an important exception to this generalization in the case of maintenance and cure.* From its dawn, the maritime law has recognized the seaman's right to maintenance and cure for injuries suffered in the course of his service to his vessel, whether occurring on sea or on land. . . .

''Some of the grounds for recovery of maintenance and cure would, in modern terminology, be classified as torts. But the seaman's right was firmly established in the maritime law long before recognition of the distinction between tort and contract. In its origin, maintenance and cure must be taken as an incident to the status of the seaman in the employment of his ship. . . . That status has from the beginning been peculiarly within the province of the maritime law, . . . and upon principles consistently followed by this Court it is subject to the power of Congress to modify the conditions and extent of the remedy afforded by the maritime law to seamen injured while engaged in a maritime service.

''The right of recovery in the Jones Act is given to the seaman as such, and, as in the case of maintenance and cure, the *admiralty jurisdiction* over the suit depends not on the place where the injury is inflicted but on the nature of the

service and its relationship to the operation of the vessel plying in navigable waters. . . .

"It follows that the Jones Act, in extending a right of recovery to the seaman injured while in the service of his vessel by negligence, has done no more than supplement the remedy of maintenance and cure for injuries suffered by the seaman, whether on land or sea, by giving to him the indemnity which the maritime law afforded to a seaman injured in consequence of the unseaworthiness of the vessel or its tackle. . . . Since the subject matter, the seaman's right to compensation for injuries received in the course of his employment, is one traditionally cognizable in admiralty, the Jones Act, by enlarging the remedy, did not go beyond modification of substantive rules of the maritime law well within the scope of the admiralty jurisdiction whether the vessel, plying navigable waters, be engaged in interstate commerce or not." (Italics added.) While neither the Aguilar nor O'Donnell cases involved the question of a conflict between state workmen's compensation laws and maritime laws, we believe they are persuasive authority on the issue. They clearly and conclusively establish the rule that a seaman may recover under maritime law for an injury received while performing duties in the course of his employment on land. If cases fall within the maritime law there is no escape from the conclusion that the applicability of that law is exclusive. It is not a case of harbor workers, longshoremen and the like, as distinguished from seamen, where there may be. a twilight zone as indicated in *Davis* v. *Department of Labor, supra.* The latest expression of the Supreme Court of the United States on the subject appears in *Norton* v. *Warner Co.,* (*supra*), 321 U.S. 565 [64 S.Ct. 747, 88 L.Ed. ——]. Although the issue there was whether an employee was entitled to relief under the Longshoremen's and Harbor Workers' Compensation Act, *supra,* on the one hand or under admiralty law or the Jones Act on the other, as distinguished from the conflict between the admiralty and state workmen's compensation laws, the court cited the Jensen case and emphasized the necessity of preserving the rights of a seaman. Implicit in its holding is the thought that unless it clearly appears to the contrary a seaman should have the benefits of the admiralty law or the Jones Act. The court stated at page —— (88 L.Ed.) :

"We reviewed the history of the Act (Longshoremen's and Harbor Workers' Compensation Act) in the Bassett Case and in the Parker Case, and more recently in *Davis* v. *Department of Labor*, 317 U.S. 249, 87 L.Ed. 246, 63 S.Ct. 225. As we noted in those cases, the Act was adopted to meet the difficulties engendered by the decision in *Southern P. Co.* v. *Jensen*, . . . . And see *Knickerbocker Ice Co.* v. *Stewart*, 253 U.S. 149, 64 L.Ed. 834, 40 S.Ct. 438, 11 A.L.R. 1145, 20 N.C.C.A. 635; *Washington* v. *W. C. Dawson & Co.*, 264 U.S. 219, 68 L.Ed. 646, 44 S.Ct. 302, 24 N.C.C.A. 253. That line of cases *carved out a domain* in which, according to a majority of this Court, *state law could not constitutionally afford compensation to maritime employees.* It was to fill that gap in the system of workmen's compensation that the present Act was passed. . . . But as we pointed out in the Bassett Case . . . the effort to bring a master and members of a crew of a vessel under the Act was successfully opposed by the representatives of maritime employees. . . . And the maritime unions which appeared as amicus curiae, in the present case *emphasize the importance of that exception. The liability of an employer under the Act is exclusive. . . .* On the other hand, those who are not covered by it but who are protected by maritime law are entitled to maintenance and cure, a remedy not restricted to accidents. As we said in *Aguilar* v. *Standard Oil Co.*, 318 U.S. 724, 732, 87 L.Ed. 1107, 1114, 63 S.Ct. 930, '*In this respect it is a broader liability than that imposed by modern workmen's compensation statutes.*' Moreover, seamen may sue under the Jones Act . . . for injuries in the course of their employment. And in such actions assumption of risk is no defense . . . Or suit may be brought in admiralty for injuries caused by unseaworthiness of the vessel or its appurtenant appliances and equipment . . . These are *basic* rights. The maritime unions appearing in the present case maintain that those remedies are indeed superior to the relief afforded by the Longshoremen's and Harbor Workers' Compensation Act. Whether they are more desirable than a system of compensation is not for us to determine. But where Congress has provided that those basic rights shall not be withheld from a class or classes of maritime employees it is our duty on judicial review to respect the command and not permit the exemption to be narrowed whether by administrative construction or otherwise."

In the instant case the employee was a seaman. The day before the injury he had been employed as a member of the crew to go on a fishing cruise in navigable waters. The following day he worked on the ship for a while, then at the direction of his employer went on land to get a fishing net, which was certainly an act in the course of and related to his service to the ship. The only reasonable conclusion from those circumstances is that he was a seaman injured in the course of his duties as such.

Respondents rely upon such cases as *Grant Smith-Porter Ship Co.* v. *Rohde, supra; State Industrial Com.* v. *Nordenholt Co., supra; Alaska Packers Assn.* v. *Ind. Acc. Com., supra;* and *London etc. Co.* v. *Industrial Acc. Com.,* 279 U.S. 109 [49 S.Ct. 296, 73 L.Ed. 632]. The Rohde case involved an injury to a carpenter employed in the construction of a ship nearly completed and lying in navigable waters as a result of the negligence of his employer. He was not a seaman and it was held that neither his contract nor activities were maritime and that torts were controlled by the local law hence the state workmen's compensation law applied. Likewise, in the Nordenholt case the injury was to a longshoreman, not a seaman, and the injury was suffered while he was working on land assisting in the unloading of a ship. It was concluded that to apply the state law would not interfere with the uniformity of marine law. In the Alaska Packers case the employee was employed as a seaman and for general work in a cannery. After the fishing season was over, that is, after his seaman's employment was past, he was injured while on shore attempting to push a fishing boat into navigable water for the purpose of floating to its winter dry dock. As expressed by the court at page 469:

"Peterson was not employed merely to work on the bark or the fishing boat. He also undertook to perform services as directed on land *in connection with the canning operations.* When injured certainly he was not engaged in any work so directly connected with navigation and commerce that to permit the rights of the parties to be controlled by the local law would interfere with the essential uniformity of the general maritime law." (Italics added.) In the case at bar the employee was employed solely as a seaman fisherman and although the fishing trip had not commenced, his work was directly connected with that employment and not some dis-

tinct nonmaritime service on land. In the London Company case the employee was a seaman on a vessel conducting fishing excursions. He was drowned while in a small boat at his master's order attempting to save the vessel which had broken from her moorings. The conclusion of the California Industrial Accident Commission that it had jurisdiction was repudiated. All of the cases since the Jensen case were discussed and distinguished. The concluding statement is pertinent (p. 125):

"The conclusion sought to be drawn by counsel for the Commission from the Rohde and other cases is that workmen's compensation acts will apply unless their application would interfere with the uniformity of the general maritime law in interstate and foreign commerce, and there is neither here. But this omits one of the grounds for making an exception—that it shall not be prejudicial to the characteristic features of the maritime law. That is just what it would be here, for here we have a transaction on the navigable waters of the United States which in every respect covers all the characteristic features of maritime law and has no other features but those. To apply to such a case a state compensation law would certainly be prejudicial to those features."

From the foregoing it clearly appears that under the most recent decisions of the United States Supreme Court an action to recover for an injury to a seaman even though occurring on land is peculiarly within the maritime jurisdiction by way of maintenance and cure if no tort is involved or by way of the Jones Act if there is negligence. The many cases that were decided prior to these recent decisions cannot be considered controlling. The instant case falls clearly within the reasoning in the O'Donnell and Aguilar cases above discussed.

In our opinion the best solution of the problem would be to overrule the Jensen case and thus eliminate the constitutional objection to the joint operation of state compensation and federal maritime laws. A right under the state law would then exist in those cases where the injury occurred within the territorial jurisdiction of the state regardless of whether the employee's activities were maritime or on navigable waters. Less difficulty would be encountered at least in determining whether or not a case is justiciable under the state law. Rights under the maritime law would be the

same as now exist. The difficulty in fixing the limits of the maritime law in particular cases would still exist but they would be no greater than the analogous problem of determining whether the injury occurred in the course of employment. To avoid double recovery for the same injury and the compensable factors thereof where both remedies were sought before the statute of limitations had run, the appropriate tribunal could offset one against the other to the extent that they overlapped. However, the Supreme Court of the United States has not chosen to follow such course and we are not authorized to do so.

We conclude therefore that the respondent commission did not have jurisdiction of the case at bar and therefore its award is annulled.

Gibson, C. J., Shenk, J., Curtis, J., Traynor, J., and Schauer, J., concurred.

Edmonds, J., concurred in the judgment.