[Civ. No. 12809. First Dist., Div. One. June 22, 1945.]

FRANK SMREKAR, JR., a Minor, etc., Appellant, v. BAY AND RIVER NAVIGATION COMPANY (a Corporation) et al., Respondents.

A. L. Crawford and Ralph Bancroft for Appellant.

W. N. Mullen for Respondents.

PETERS, P. J.—Plaintiff, while on a vessel in navigable waters, and while acting in the course and scope of his employment, received injuries for which he brought this action against his employer under the Jones Act. (46 U.S.C.A. § 688.) This act made applicable to seamen injured in the course of their employment the provisions of the Federal Employers' Liability Act (45 U.S.C.A. §§ 51-60) which gives to railroad employees a right of recovery from their employer for injuries resulting from the negligence of the employer, its agents or employees. (*O'Donnell* v. *Great Lakes Dredge & Dock Co.*, 318 U.S. 36 [63 S.Ct. 488, 87 L.Ed. 596]; *Occidental Ind. Co.* v. *Industrial Acc. Com.*, 24 Cal.2d 310 [149 P.2d 841].) Thus, under the Jones Act, an injured seaman, if negligence exists, may maintain an action in the state courts to recover the damages caused by such negligence. It is such an action that plaintiff herein brought against his employer. The latter raised the special defense that plaintiff's exclusive remedy was for compensation under the Longshoremen's and Harbor Workers' Compensation Act, first passed in 1927. (33 U.S.C.A. § 901 et seq.) This special defense was tried separately under section 597 of the Code of Civil Procedure. The trial court found that ''plaintiff herein was not an able seaman or a member of the crew of the S. S. 'M. V. Komoku,' but a stevedore and worker whose primary duty aboard said S. S. 'M. V. Komoku' was to load and unload such boat when in the various ports at which it docked and supervise the work of others hired to do such loading and unloading, and the primary reason for his being aboard such steamship was not to

aid or facilitate such steamship in its navigation, and that at the time of his injury . . . on July 22, 1941, he was not engaged in navigation." Based on this finding the trial court held that plaintiff had no legal right to sue under the Jones Act, and entered its judgment in favor of the defendant. From this judgment plaintiff appeals contending that the above finding is not supported by substantial evidence, and that the record shows, as a matter of law, that he is of the class mentioned in the Jones Act.

The Jones Act, passed long before the Longshoremen's and Harbor Workers' Compensation Act, purports to grant the rights therein conferred to "any seaman who shall suffer personal injury in the course of his employment. . . ." (46 U.S.C.A. § 688.) Because the United States Supreme Court had held that state compensation acts could not constitutionally apply to stevedores and longshoremen injured while engaged in maritime work on navigable waters (*Southern Pacific Co.* v. *Jensen,* 244 U.S. 205 [37 S.Ct. 524, 61 L.Ed. 1086]) prior to 1927, it was held that such workers had the status of "seamen" within the meaning of the Jones Act in order to enable them to bring actions under that statute. (*International Stevedoring Co.* v. *Haverty,* 272 U.S. 50 [47 S.Ct. 19, 71 L.Ed. 157]; *Northern Coal & Dock Co.* v. *Strand,* 278 U.S. 142 [49 S.Ct. 88, 73 L.Ed. 232].) In 1927 this situation was changed by the passage of the Longshoremen's and Harbor Workers' Compensation Act (33 U.S.C.A. § 901 et seq.) By section 905 of that act the liability of the employer created by the statute is made exclusive of all other liabilities of the employer in all cases to which the act applies. The statute does not affirmatively enumerate the persons covered by it, but does so negatively. Section 902, subdivision 3, states that the term "employee" as used in the act "does not include a master or member of a crew of any vessel, nor any person engaged by the master to load or unload or repair any small vessel under eighteen tons net." The vessel here involved was far in excess of eighteen tons net. Subdivision 4 of the same section states that the term " 'employer' means an employer any of whose employees are employed in maritime employment, in whole or in part, upon the navigable waters of the United States (including any dry dock)."

Section 903 is the section that defines "coverage." It states: "(a) Compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the

disability or death results from an injury occurring upon the navigable waters of the United States (including any dry dock) and if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by State law. No compensation shall be payable in respect of the disability or death of—

"(1) A master or member of a crew of any vessel, nor any person engaged by the master to load or unload or repair any small vessel under eighteen tons net; . . ."

The result of these enactments is that all maritime workers injured on navigable waters are covered by the exclusive provisions of the federal compensation act except the "master or member of a crew" and the others mentioned in section 902. Those excluded by that section may still sue under the Jones Act. All other maritime workers must sue under the compensation act. (*Frankel* v. *Bethlehem-Fairfield Shipyard,* 46 F.Supp. 242; aff. 132 F.2d 634; cert. denied 319 U.S. 746 [63 S.Ct. 1030, 87 L.Ed. 1702]; for a good discussion of the history of these sections, see *Nogueira* v. *New York, N. H. & H. R. Co.,* 281 U.S. 128 [50 S.Ct. 303, 74 L.Ed. 754]; *South Chicago Coal & Dock Co.* v. *Bassett,* 309 U.S. 251 [60 S.Ct. 544, 84 L.Ed. 732]; *O'Donnell* v. *Great Lakes Dredge & Dock Co.,* 318 U.S. 36 [63 S.Ct. 488, 87 L.Ed. 596]; *Norton* v. *Warner Co.,* 321 U.S. 565 [64 S.Ct. 747, 88 L.Ed.931].)

 It is plaintiff's theory that he was a member of the crew of the vessel on which he was injured and therefore may properly sue under the Jones Act. It is quite clear that this is a question of fact, and that, if the evidence is conflicting, the finding of the trier of the fact will not be set aside. There are cases where the nature of the employment is such that any reasonable person must conclude that the person involved is a member of the crew. Such is the case of *Norton* v. *Warner Co., supra,* so heavily relied upon by plaintiff. In that case the Supreme Court reversed the finding of the trier of the fact that one Rusin was a harbor worker. Rusin was in complete charge of a barge traveling on navigable waters. It was his duty to take general care of the barge, repairing leaks, pumping it out, putting out navigation lights and signals, taking lines from tugs and tending lines at docks. He took orders from the tug boat officers while being towed. He had no shore duties and did not handle cargo. The Supreme Court held that the finding of the trier of the fact was binding if supported by substantial evidence, and that the appellate court has no

power to set aside such a finding even if deemed by it to be against the weight of the evidence. The court then went on to hold that under the evidence the only possible conclusion was that Rusin was a member of the crew. In so holding the court stated (88 L.Ed. at p. 937) : "A crew is generally 'equivalent to ship's company' as Mr. Justice Story said in *United States* v. *Winn* (CC) 3 Sumn. 209, Fed. Cas. No. 16,740. But we pointed out in the Bassett Case that the word does not have 'an absolutely unvarying legal significance.' 309 U.S. at p. 258, 84 L.Ed. 736, 60 S.Ct. 544. We know of no reason why a person in sole charge of a vessel on a voyage is not as much a 'member of the crew' as he would be if there were two or more aboard. We said in the Bassett Case that the term 'crew' embraced those 'who are naturally and primarily on board' the vessel 'to aid in her navigation.' Id. 309 U.S. p. 260, 84 L.Ed. 737, 60 S.Ct. 544. But navigation is not limited to 'putting over the helm.' It also embraces duties essential for other purposes of the vessel. Certainly members of the crew are not confined to those who can 'hand, reef and steer.' Judge Hough pointed out in *The Buena Ventura* (DC) 243 F. 797, 799, that 'every one is entitled to the privilege of a seaman who, like seamen, at all times contribute to and labor about the operation and welfare of the ship when she is upon a voyage.' And see *The Minna* (DC) 11 F. 759; *Disbrow* v. *The Walsh Bros.* (DC) 36 F. 607, 608 (bargeman). We think that 'crew' must have at least as broad a meaning under the Act. For it is plain from the amendment exempting a 'master or member of a crew' that ship's company was not brought under the Act. And we are told by the Senate Report, as already noted, that the purpose of the legislation was to provide compensation for those who 'are mainly employed in loading, unloading, refitting, and repairing ships.' S. Rep. No. 973, *supra.*

"Rusin, unlike the employee in the Bassett Case, did no work of the latter variety. He performed on the barge functions of the same quality as those performed in the maintenance and operation of many vessels."

There are other cases where the nature of the employment is such that any reasonable person must conclude that the person involved is not a member of the crew but a maritime worker of a type that clearly falls within the compensation act. In between these two extremes are the cases where reasonable minds may reasonably differ on the question. In such a case whether or not the particular employee is a member of the

crew so as to be excluded from the operation of the compensation act, or is a maritime worker within the ambit of that statute is a question of fact for the trier of the fact. (*Bowen* v. *Shamrock Towing Co.*, 139 F.2d 674; *Carumbo* v. *Cape Cod S. S. Co.*, 123 F.2d 991; *Pacific Employers Ins. Co.* v. *Pillsbury*, 130 F.2d 21; *Puget Sound Freight Lines* v. *Marshall*, 125 F.2d 876; *Norton* v. *Warner Co.*, *supra; South Chicago Coal & Dock Co.* v. *Bassett, supra.*) Such is the present case.

 Plaintiff was employed as a clerk and was attached to the ship "M. V. Komoku." This vessel was used by the employer to transport sugar from the refinery at Crockett to various points on San Francisco Bay. Plaintiff had formerly been employed by the same employer on the same boat as a laborer to assist in loading and unloading the cargo. In that position he was admittedly not a member of the crew. Prior to his injury he was appointed to the position of clerk to help the mate in handling the cargo. The mate was also assisted by the super-cargo who was considered to be a member of the crew, but whose duties were somewhat different from those of plaintiff. Plaintiff's primary duty was to discover sacks of sugar that had been damaged and to replace such sacks with undamaged sacks. When a bag of sugar was torn he would draw another bag from the reserve and replace the damaged bag. He was required to fill out reports on the damaged bags, and he did this paper work while the vessel was in motion between stops. The ship returned to Crockett each night. After the vessel had docked at Crockett he would secure the recapitulation for the next day's load and order the stock for the next day's work. After performing this duty he had no other duties in connection with the vessel until the next morning. His time was then free time. He slept aboard the vessel every night except Saturdays, ate with the officers, and was paid a monthly wage. He participated in both the loading and unloading of the vessel by checking the sacks, and did his paper work while the boat was in motion. While the unloading was in progress he saw to it that the sugar was placed in the proper railroad cars by the "jitney" drivers and directed these drivers to the proper car. While working as a laborer he was paid by the mate, but after his promotion to clerk he was paid by the captain. He had a Seaman's Certificate of Identification and a Seaman's Certificate of Service, but no A. B. Seaman's License, and was not required to have such a license.

At the time of his injury the vessel was tied to the dock. Plaintiff had observed some damaged sacks during the unloading process, and had taken these damaged sacks back to the boat. He was bringing undamaged sacks up on the ship's elevator when his heel caught, causing most serious injuries to his foot. He has been paid compensation since his injury.

Under these facts it seems quite clear that the findings of the trial court that plaintiff was not a member of the crew, but a worker whose primary duty was to load and unload the boat and to supervise the work of others engaged in loading and unloading, and that his primary purpose in being on board was not to aid or facilitate the navigation of the vessel, are amply supported.

None of the cases cited by plaintiff compel or even suggest the conclusion that plaintiff, as a matter of law, was a member of the crew. Reference has already been made to the case of *Norton* v. *Warner Co., supra.* The case of *O'Donnell* v. *Great Lakes Dredge & Dock Co.*, 318 U.S. 36 [63 S.Ct. 488, 87 L. Ed. 596], is also cited. That case simply held that a seaman and a member of the crew injured on shore while in the service of his ship was entitled to recover under the Jones Act. The same is true of *Occidental Ind. Co.* v. *Industrial Acc. Com.*, 24 Cal.2d 310 [149 P.2d 841], where it was admitted that the injured person was a member of the crew, the sole question being whether such a crew member was covered by the Jones Act or the State Compensation Act when he was injured on shore while getting nets at his employer's direction.

No useful purpose would be served by citing cases that have passed on various factual situations. Each case must, of course, turn on its own facts. The cases already cited definitely establish that the problem here involved is one of fact and that since such finding is amply supported the appellate court has no power to disturb it. There is one case, however, that involves this same employer and the same type of vessel, that should be mentioned—the case of *Pacific Employers Ins. Co.* v. *Pillsbury*, 130 F.2d 21. That case involved a sister ship of the one here involved, that was likewise engaged in transporting sugar from Crockett to various points on San Francisco Bay. The injured employee was hired as a deckhand at a monthly wage. He was required to live aboard the vessel five days a week. During most of his working time he was storing sugar on the boat or assisting in the discharge of such cargo. He helped to sweep up sugar spilt on the decks,

and occasionally assisted in handling the lines in tying and untying the vessel. Ordinarily he slept while the boat was in motion, but could be called in an emergency. He had no shore duties and all orders were taken from the mate or captain. The trier of the fact found that the injured employee was not a member of the crew. On appeal it was urged that in assisting in loading and unloading the vessel the employee was carrying out the very purpose of the vessel and was therefore assisting in its navigation. Among other cases referred to by the court was the case of *Puget Sound Freight Lines* v. *Marshall*, 125 F.2d 876, concerning which the court stated (130 F.2d at p. 23): "this court was called upon to decide whether or not one Jondro was a 'member of a crew', within the intendment of the Act. He had been employed to do loading and unloading work aboard a vessel which carried cargo to and from various ports on Puget Sound. The nature of his work required that he travel with the vessel, on board which he was provided with meals and sleeping quarters. He lived ashore for an average of about four days out of each month, and was paid on a monthly basis. His duties included putting the cargo plank out upon arrival at a dock and taking it in upon departure. His sole duties were in relation to loading and discharging cargo, although on occasion he might handle a line as an incident to his main work, or might take the wheel occasionally, but was not required to do so. He had no duties while the boat was underway, and could do anything he pleased during that time. We held that Jondro was not a 'member of a crew.' The following quotation is from the opinion (125 F.2d at page 879):

" '. . . The distinction between a longshoreman and a crew-member seems to hinge upon whether or not the employee is "naturally and primarily on board (the vessel) to aid in her navigation." The work done by the claimant had no more relation to navigation than does that performed by a regular longshoreman engaged at a port to assist in loading or discharging the cargo of a boat. As was so well stated in *Carumbo* v. *Cape Cod S. S. Co.*, 1 Cir., 123 F.2d 991, 995, "The requirements that the ship be in navigation; that there be a more or less permanent connection with the ship; and that the worker be aboard primarily to aid in navigation appear to us to be the essential and decisive elements of the definition of a 'member of a crew.' " ' "

"At this point we may remark that a review of the many cases cited by the litigants here would unnecessarily extend this opinion and would be of no great assistance; for as stated in the Puget Sound Freight Lines case, *supra,* 125 F.2d 876, 878, each claimant's classification as a crew-member or harbor worker 'must be determined by the circumstances of his own, individual case' and 'the deputy commissioner's determination of the employee's status [is] conclusive and not subject to judicial review if supported by substantial evidence.'

"From a consideration of claimant Slawson's 'primary' and 'actual duties' aboard the 'Crockett' it is at once apparent that the reasoning of the opinions rendered in the South Chicago and Puget Sound Freight Lines cases, *supra,* applies to, and governs, the instant case; and we may state, without rehearsal of the facts, that there is substantial evidence to support the finding of the deputy commissioner that claimant was not a 'member of a crew,' but rather a harbor worker or longshoreman." The court then went on to hold that the finding the injured employee was not a member of the crew was amply supported.

It is obvious that in the instant case the plaintiff's duties were of the same general character as those involved in the Pacific Employers case, *supra.* While plaintiff's duties were more supervisory than those in the Pacific Employers case, and dealt with a specified part of the cargo, it is obvious that in both cases the primary function of the employees was to participate in the loading and unloading of the boat. Such duties do not, as a matter of law, make the employee a "member of the crew" as those words are used in the federal compensation act.

The judgment appealed from is affirmed.

Ward, J., and Dooling, J. pro tem., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 16, 1945. Carter, J., and Traynor, J., voted for a hearing.