## POLLARD v. SEAS SHIPPING CO., Inc.

### No. 146.

Circuit Court of Appeals, Second Circuit.

Jan. 9, 1945.

Paul L. Murphy, of New York City (Frank V. Barns, of New York City, on the brief), for appellant.

Silas B. Axtell, of New York City (Lucien V. Axtell and Charles Andrews Ellis, both of New York City, on the brief), for appellee.

Before CHASE, CLARK, and FRANK, Circuit Judges.

CLARK, Circuit Judge.

Plaintiff herein sues under the Jones Act, 46 U.S.C.A. § 688, as administratrix of her husband's estate, for damages for his death while in the course of his employment as a fireman on the S. S. "Algic," owned by defendant. It is her contention that he fell overboard and was drowned because of a defective condition of a cat-walk and railing and because the catwalk lacked a proper rope and hand railing. After a trial the jury brought in a verdict for the plaintiff for $25,000, and this appeal by defendant is from the resulting judgment. It presses three grounds: That plaintiff failed to prove negligence on defendant's part causing the death of her intestate; that no recovery can be had under the Jones Act for mere death by drowning without some showing of pain and suffering; and that damages were excessive.

At the trial the plaintiff's most important witness was Sowaal, the second cook and baker. He testified that he saw Pollard, the deceased, playing cards under the poop-deck and trying on some clothes between 11 and 11:30 P.M. on December 7, 1941; that at about 11:30 P.M., while he, Sowaal, was walking on or near the catwalk in question, which he asserted was flush with the side of the vessel, he heard "a crash, a cry and a splash" which took place about fifteen to twenty feet behind him; and that he recognized the cry to be the voice of Pollard. He went back, found broken a piece of railing three feet long, and reported the matter to Goodwin, a member of the crew, who, Sowaal thought, was standing watch at the time, and who, according to Sowaal, reported the matter to the bridge. Although Goodwin denies that he ever reported Sowaal's story to anyone, that fact does not seem of importance, since all admit that a search of the vessel at 12 o'clock revealed that Pollard had disappeared.

Drever, the ship's carpenter and plaintiff's second most important witness, corroborated Sowaal's testimony as to the broken railing and stated that he had fixed it the next morning. He also testified as to

the dangerous condition of the catwalk, which he had built at sea after the ship had left Port Elizabeth, South Africa, the morning of December 7, 1941, with the poor material available on shipboard. The catwalk was a temporary structure for the voyage, built over the deck cargo to connect the midships house to the poop-deck of this freighter. The dunnage from which it was built was of slabs of varying thickness and width, mostly swamp oak, fastened with 2½ inch, or 6-penny, nails, the rail being lashed to the stay with rope yarn, which Drever said "can break in any part," no matter "how secure it is." In Drever's own words this material was "all junk," and he admitted that the catwalk was not a good job.

■ The composite picture of plaintiff's evidence, as presented through the testimony of Sowaal, Drever, and other witnesses, was that the catwalk was close to the side of the vessel; that it was broken and dangerous; and that on the night in question there was a crash, cry, and splash, the cry being identified as Pollard's. This testimony was contradicted by defendant's witnesses, who said that the catwalk was all right, reasonably safe, and placed well inboard, so that, had Pollard gone through the railing, he would not have gone overboard. But it seems apparent that plaintiff has shown enough to permit of an inference by the jury that defendant's negligence in constructing a dangerous catwalk had caused Pollard to fall through the railing and overboard. Certainly no other explanation for Pollard's disappearance has been offered, suicide being entirely unlikely, in view of his generally normal, clean-cut conduct, and love for his family, as indicated by his letters. Defendant bitterly attacks the testimony of Sowaal, who was at least a colorful character, having been, among other things, an actor, a cattle puncher, and an insurance company investigator, and who admitted a greater facility in remembering names and faces than most people. And yet his testimony did contain many contradictions which defendant's counsel has assiduously called to our attention. But after all, it is the function of the jury, not of an appellate court, to weigh the credibility of a witness. Here the issue was made quite clear, because the court, at defendant's request, specifically charged that, if the jury found Sowaal's testimony as to his experience on the catwalk on the night in question untrue, they must find for the defendant. The case was undoubt-

edly close on the issue of negligence as a proximate cause of the death; but that does not justify either the District Court or us in usurping the function of the jury. Jacob v. City of New York, 315 U.S. 752, 757, 62 S.Ct. 854, 86 L.Ed. 1166; Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 68, 63 S.Ct. 444, 87 L.Ed. 610, 143 A.L.R. 967; Stewart v. Baltimore & O. R. Co., 2 Cir., 137 F.2d 527, 528.

■ Defendant further contends, however, that the District Court lacked jurisdiction, because plaintiff failed to state a claim under the Jones Act, and consequently could not bring a civil action and obtain a jury trial, but was limited to a suit in admiralty under the Wrongful Death Act, 46 U.S.C.A. § 761. The Jones Act, after granting a right to a seaman to sue for damages for personal injuries suffered in the course of his employment, continues, "and in case of the death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable." But defendant says that death by drowning, without more, does not constitute "personal injury"; there must, at least, be some showing of anguish or suffering before recovery can be had. Nevertheless, despite the seeming dialectical plausibility of this argument, the Supreme Court has held death by drowning sufficient to give rise to a right of action by the beneficiary for loss of support. Van Beeck v. Sabine Towing Co., 300 U.S. 342, 57 S.Ct. 452, 81 L.Ed. 685; see also The G. W. Glenn, D.C.Del., 4 F.Supp. 727; Kirincich v. Standard Dredging Co., 3 Cir., 112 F.2d 163. The Van Beeck case refers to the rights granted under the Employers' Liability Act, 45 U.S.C.A. § 51, and made applicable to seamen by the terms of the Jones Act above quoted, to demonstrate that two kinds of actions are authorized: one by the personal representative for pain and suffering by the decedent, based on his loss and suffering, and one by the personal representative for loss of support of the beneficiary. Defendant relies on our decision in The Black Gull, 2 Cir., 82 F.2d 758, certiorari denied American Diamond Lines v. Peterson, 298 U.S. 684, 56 S.Ct. 954, 80 L.Ed. 1404; but we there expressly pointed to these two rights of action and held only as to the claim for the deceased's

pain and suffering before his death that the mere fact of drowning was insufficient to establish plaintiff's prima facie case. As to the claim for loss of support, we said it was unnecessary to rest upon the Jones Act and to decide whether a compulsory pilot was an employee of the vessel, since the Wrongful Death Act imposed the same liability and was not limited to employees of the vessel causing the death. Rightly considered, therefore, the case supports the distinction later made clear in the Van Beeck case and justifies this action for loss of support and the jury trial had below.

As to defendant's final contention that the verdict was excessive, we see no reason for disturbing the jury's determination. The facts that Pollard received base pay of $72.50 a month, emergency war compensation of $17.50 a month, a war bonus of $50 a month, and overtime of $6.50 a month, or a total of $146.50; that he sent to his wife $40 semimonthly; that he was only 32 years old, with a life expectancy of 33 years, his wife having an expectancy of 31½ years—all make the award of $25,000 appear reasonable. And though a postwar wage reduction is certainly not improbable, yet this may be offset by the possibility of Pollard's promotion. Nor is there anything to defendant's further claim that damages should have been reduced because of Pollard's contributory negligence. For defendant rests this claim on a mere showing that other members of the crew walked the catwalk without getting hurt, which, it is contended, must lead us to suppose that Pollard was careless in some way. But this is clearly not enough to establish contributory negligence. Thunberg v. Panama R. Co., 2 Cir., 139 F.2d 567.

Judgment affirmed.