Virginia J. **KING**, as Administratrix of the Estate of John Elvins King, Appellant,

v.

PAN AMERICAN **WORLD AIRWAYS**, a corporation, Appellee.

No. 16298.

United States Court of Appeals Ninth Circuit.

Aug. 27, 1959.

Rehearing Denied Dec. 8, 1959.

Smith, Parrish, Paduck & Clancy, Joseph Edward Smith, William Shannon Parrish, John B. Lewis, Oakland, Cal., Herbert Chamberlin, San Francisco, Cal., for appellant.

Steinhart, Goldberg, Feigenbaum & Ladar, Neil E. Falconer, John J. Goldberg, San Francisco, Cal., for appellee.

Before STEPHENS, HAMLIN and JERTBERG, Circuit Judges.

JERTBERG, Circuit Judge.

Appellant appeals from the final decree of the district court granting appellee's motion for a summary judgment in its favor. Jurisdiction of the district court was based on U.S.C. Title 28, Section 1333. Jurisdiction of this Court to review such decree is found in U.S.C. Title 28, Sections 1291 and 1294.

The parties agree that the sole and narrow question presented to this Court is whether the California Workmen's Compensation Act ousted the district court of jurisdiction to entertain a suit in admiralty against an employer for wrongful death under the Death on the High Seas Act by the administratrix of the estate of an airline employee who in the course of his employment was killed in the crash of an airliner on the high seas.

The stipulation of facts presented to the district court is as follows:

"(1) At all times relevant in this action, Respondent, Pan American World Airways, Inc., was and is a New York corporation, organized and existing under the laws of the State of New York with its airline operations divided into three separate divisions: The Pacific-Alaska Division (the Pacific area and Alaska) with headquarters at San Francisco, California; the Latin American Division (Central and South America) with headquarters at Miami, Florida; and the Atlantic Division (Europe and

East) with headquarters at New York City, New York. Since 1944 the principal headquarters of the Pacific-Alaska Division has been located at the San Francisco International Airport, South San Francisco, California, and the principal headquarters of Pan American World Airways, Inc., for the transaction of business within the State of California has been located at the same place.

"(2) At all times relevant, the decedent, John Elvins King, and Libelant, Virginia J. King, were residents of the State of California;

"(3) The decedent John Elvins King, was first employed by Respondent, Pan American World Airways, Inc., on or about the 12th day of October, 1942, in San Francisco, California, and began his employment in San Francisco, California. The decedent, John Elvins King, was continuously employed by Respondent, Pan American World Airways, Inc., from the said 12th day of October, 1942, to and including the 8th day of November, 1957, and was continuously based at San Francisco since December 31, 1947.

"On May 1, 1957, said decedent was assigned the position of Flight Service Supervisor, stationed at the Pan American World Airways, Inc., base at the San Francisco International Airport, South San Francisco, California. That the duties of said employment provided that decedent John Elvins King would fly approximately 600 flying hours during a yearly employment of approximately 2080 hours.

"(4) At and prior to the time of the death of decedent, John Elvins King, on about November 8, 1957, Respondent, Pan American, had 'secured' the compensation rights of its employees under the California Workmen's Compensation Act by securing a policy of Workmen's Compensation Insurance issued by the Travelers Insurance Company, which said policy was in full force and effect at the time of the death of the decedent, John Elvins King.

"(5) The decedent, John Elvins King, left the San Francisco International Airport, South San Francisco, California, alive on November 8, 1957, on board Pan American Flight No. 7, the first stop of which was Territory of Hawaii, U.S.A. At the time of his death, decedent, John Elvins King, was performing services growing out of and incident to his employment, and was acting within the course of his employment, and his death was not caused by intoxication. On November 8, 1957, the airplane entered the water at a point between San Francisco, California, and the Territory of Hawaii (Hawaiian Islands), more than one marine league from any shoreline. Following said event John Elvins King was dead. The parties do not stipulate as to whether he died in the air or in the water.

"(6) Following the death of decedent, John Elvins King, Respondent, Pan American World Airways, Inc., and Travelers Insurance Company, its Workmen's Compensation Insurance carrier, on December 2, 1957, filed an application before the Industrial Accident Commission of the State of California, being Claim No. SF 183–024, in which Virginia J. King, Jean C. King-Freeman, Richard R. King and Melissa A. King, minors, by their Guardian Ad Litem and Trustee, Virginia J. King, were parties. Said application was filed to determine the liability of applicant, Pan American, for death benefit and burial expense under the California Workmen's Compensation Act. On February 20, 1958, a hearing was held before the Industrial Accident Commission upon said application. At said hearing, Virginia J. King appeared, through counsel, and contested the jurisdiction of the Industrial Accident Commission.

"At said time and place, said Virginia J. King advised that she was appearing specially, and that the application had been filed by Respondents without and against her consent. That Respondents agreed that defendants were not appear-

ing voluntarily. That Libelant advised further that her appearance was not to be considered as a consent to jurisdiction of the Industrial Accident Commission either directly or indirectly, nor was she appearing for any reason other than the fact that she had been summoned to appear by the Industrial Accident Commission of the State of California after proceedings instituted by Pan American World Airways, Inc. "As a result of said application and hearing, an order awarding a death benefit in favor of Virginia J. King, Richard R. King and Melissa A. King and against Travelers Insurance Company was made by the California Industrial Accident Commission on March 31, 1958.[1]

"A certified copy of said application (Exhibit 'A') and the order made by the Industrial Accident Commission with respect to said application (Exhibit 'B') in said proceeding are attached as Exhibits 'A' and 'B' hereof, and a certified copy of the opinion of the referee is attached hereto as Exhibit 'C' hereof.

"Entry of this stipulation shall not be deemed an admission by either party as to the relevancy or materiality of any of the facts stipulated to, and the parties reserve their rights in this regard."

Appellant's libel was based upon the Death on the High Seas Act (March 30, 1920, c. 111, Sections 1–7, 41 Stat. 537, 46 U.S.C.A. §§ 761–767). Relevant portions of that Act are as follows:

Section 1. "Whenever the death of a person shall be caused by wrongful act, neglect, or default occurring on the high seas beyond a marine league from the shore of any State, or the District of Columbia, or the Territories or dependencies of the United States, the personal representative of the decedent may maintain a suit for damages in the district courts of the United States, in admiralty, for the exclusive benefit of the decedent's wife, husband, parent, child, or dependent relative against the vessel, person, or corporation which would have been liable if death had not ensued."

Section 2. "The recovery in such suit shall be a fair and just compensation for the pecuniary loss sustained by the persons for whose benefit the suit is brought and shall be apportioned among them by the court in proportion to the loss they may severally have suffered by reason of the death of the person by whose representative the suit is brought."

Section 5. "If a person die as a result of such wrongful act, neglect, or default as is mentioned in section 761 of this title during the pendency in a court of admiralty of the United States of a suit to recover damages for personal injuries in respect of such act, neglect, or default, the personal representative of the decedent may be substituted as a party and the suit may proceed as a suit under this chapter for the recovery of the compensation provided in section 762 of this title."

Section 7. "The provisions of any State statute giving or regulating rights of action or remedies for death shall not be affected by this chapter. Nor shall this chapter apply to the Great Lakes or to any waters within the territorial limits of any State, or to any navigable waters in the Panama Canal Zone."

As a separate and special defense, the appellee alleged that the rights and obligations of the appellant were governed by the provisions of the California Workmen's Compensation Act, and that by virtue of the provisions thereof the rights and remedies afforded by said Workmen's Compensation Act provided the sole and exclusive right and remedy of appellant against the appellee for and on account of the death of the deceased employee, and that by virtue thereof appellant is barred from maintaining the action.

The California Workmen's Compensation Act (cited as sections in the West's Ann.California Labor Code) in its pertinent parts provides:

---

1. At oral argument in this case appellant's counsel stated that payment of the award had been accepted by appellant.

Section 3600: "Liability for the compensation provided by this division, in lieu of any other liability whatsoever to any person except as provided in section 3706, shall, without regard to negligence, exist against an employer for any injury sustained by his employees arising out of and in the course of the employment and for the death of any employee if the injury proximately causes death, in those cases where the following conditions of compensation concur: * * *"

Section 3600.5: "(a) If an employee who has been hired or is regularly employed in this State receives personal injury by accident arising out of and in the course of such employment outside of this State, he, or his dependents in case of his death, shall be entitled to compensation according to the law of this State * * *"

Section 3601: "Where the conditions of compensation exist, the right to recover such compensation, pursuant to the provisions of this division is, except as provided in section 3706, the exclusive remedy against the employer for the injury or death."

Section 3706: "If an employer fails to secure the payment of compensation, any injured employee or his dependents may proceed against such employer by filing an application for compensation with the commission, and, in addition, may bring an action at law against such employer for damages, as if this division did not apply."

Section 5305: "The commission has jurisdiction over all controversies arising out of injuries suffered without the territorial limits of this State in those cases where the injured employee is a resident of this State at the time of the injury and the contract of hire was made in this State. Any such employee or his dependents shall be entitled to the compensation or death benefits provided by this division."

Section 3203: "The provisions of Division 4 and Division 5 shall not apply to employers or employments which, according to law, are so engaged in interstate commerce as not to be subject to the legislative power of the State, nor to employees injured while they are so engaged, except in so far as such divisions are permitted to apply under the * * * Constitution or laws of the United States."

The summary judgment was granted on the ground that the appellant's exclusive remedy was under the California Workmen's Compensation Act, and that appellant was therefore precluded from maintaining the admiralty remedy for wrongful death accorded by the Death on the High Seas Act. See King v. Pan American World Airways, D.C., 166 F. Supp. 136.

Appellant's main contentions are: (1) that the application of the California Workmen's Compensation Act to the instant case is invalid under the holding of the Supreme Court of the United States in Southern Pacific Co. v. Jensen, 1917, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086; (2) that the Death on the High Seas Act abrogated the otherwise applicable Workmen's Compensation Act; and (3) that decisions of this Court compel us to hold that the Death on the High Seas Act abrogated the remedy afforded under the California Workmen's Compensation Act.

Before proceeding to discuss appellant's contentions we will note several general observations.

Neither party questions the power of Congress to enact the Death on the High Seas Act. If in the instant case the airplane had crashed on land, whether in the continental United States, in Hawaii, or in any foreign country, the remedy accorded under the Death on the High Seas Act would not have been applicable. If King had survived the crash in the instant case, no remedy would have been available to him under the Death on the High Seas Act.

It is not disputed that due to the interstate and foreign character of business of major airlines Congress has the power under the Constitution to enact a federal compensation act applicable to airline employees and their employers comparable

to the specific federal laws enacted as to railroad workers, seamen, longshoremen, and others. Up to the present time Congress has chosen not to exercise such power.

Liability for the compensation provided by the California Workmen's Compensation Act exists against an employer without regard to negligence for any injury sustained by his employee arising out of and in the course of the employment and for the death of any employee if the injury proximately causes death. The right to recover such compensation is the exclusive remedy against the employer except under certain circumstances not here pertinent. The Act applies to all injuries whether occurring within the State of California, or occurring outside the territorial boundaries if the contract of employment was entered into in California or if the employee was regularly employed in California. In Alaska Packers Ass'n v. Industrial Accident Commission of California, etc., 294 U.S. 532, 55 S.Ct. 518, 79 L.Ed. 1044, the Supreme Court upheld an award made by the Industrial Accident Commission of California to an employee who was injured in the course of his employment in the Territory of Alaska, and whose contract of employment was entered into in California, and who had elected to be bound by the Alaska Workmen's Compensation Law, A.C.L.A.1949, § 43-3-1 et seq. Such extra-territorial jurisdiction has been sustained on the basis of a state's legitimate interest in protecting employees regularly employed within their state and their families from the consequences of industrial injuries. Cardillo v. Liberty Mutual Insurance Co., 330 U.S. 469, 67 S.Ct. 801, 91 L.Ed. 1028.

The applicable state workmen's compensation act has uniformly been held to govern industrial injuries sustained by employees of airlines in the course of their employment whether the crash occurred in this country or on foreign soil. Willingham v. Eastern Air Lines, 2 Cir., 199 F.2d 623; Severson v. Hanford Tri-State Air Line, Inc., 8 Cir., 105 F.2d 622, certiorari denied 309 U.S. 660, 60 S.Ct. 514, 84 L.Ed. 1008; Spelar v. American Overseas Air Lines, Inc., D.C., 80 F.Supp. 344; Urda v. Pan American Airways, 5 Cir., 211 F.2d 713. See also Duskin v. Pennsylvania-Central Air Lines, 6 Cir., 167 F.2d 727, certiorari denied 335 U.S. 829, 69 S.Ct. 56, 93 L.Ed. 382. In each of the above cited cases wherein a state wrongful death statute was involved it was held that the state workmen's compensation act excluded the operation of the otherwise applicable death act. None of the cases was based upon the Death on the High Seas Act. The rationale of these cases is that the applicable workmen's compensation law governs because it is the law in relation to which the parties contracted and the law affords a certain and speedy remedy to the injured employee, or his family in case of his death.

We will now discuss the appellant's contention: is the application of the California Workmen's Compensation Act to the instant case invalid under the doctrine announced by the Supreme Court in Southern Pacific Co. v. Jensen, supra? In the Jensen case the Supreme Court held that the New York State Workmen's Compensation Act could not be validly applied to the death of a stevedore killed while unloading a ship. The Court held that "the general maritime law" was part of our national law and that state legislation was invalid if it "works material prejudice to the characteristic features of the general maritime law". The Court further stated, "The work of a stevedore, in which the deceased was engaging, is maritime in its nature; his employment was a maritime contract; the injuries which he received were likewise maritime; and the rights and liabilities of the parties in connection therewith were matters clearly within the admiralty jurisdiction". 244 U.S. 217, 37 S.Ct. 529. The Jensen doctrine was reiterated by the Supreme Court in Knickerbocker Ice Co. v. Stewart, 1920, 253 U.S. 149, 40 S.Ct. 438, 441, 64 L.Ed. 834. In that case the decedent's death occurred while

he was employed as a bargeman and doing business of a maritime nature, and the Court held that the Congressional Act in question was invalid because it attempted to sanction state compensation remedies "for injuries suffered by employes engaged in maritime work".

The Jensen doctrine was likewise applied by the Supreme Court in State of Washington v. W. C. Dawson & Co., 1924, 264 U.S. 219, 44 S.Ct. 302, 68 L.Ed. 646. The Court dealt jointly with two cases. By the Act of June 10, 1922 (42 Stat. 634) Congress amended Sections 24(3) and 256 of the Judicial Code relating to admiralty and maritime jurisdiction (28 U.S.C.A. §§ 41, subd. 3, 256), by adding to the saving clause of that Act, "and to claimants for compensation for injuries to or death of persons other than the master or members of the crew of a vessel their rights and remedies under the workmen's compensation law of any State, District, Territory, or possession of the United States, which rights and remedies when conferred by such law shall be exclusive." One of the cases presented the question "whether one engaged in the business of stevedoring, whose employees work only on board ships in the navigable waters of Puget Sound, can be compelled to contribute to the accident fund provided for by the Workmen's Compensation Act of Washington," [264 U.S. 219, 44 S.Ct. 303] and the other case presented the question as to whether the Industrial Accident Commission of the State of California had jurisdiction to award compensation for "the death of a workman killed while actually engaged in maritime work, under maritime contract, upon a vessel moored at her dock in San Francisco Bay and discharging her cargo."

It is clear from decisions of the Supreme Court after the Jensen case that the Jensen doctrine does not apply to all maritime torts. In Grant Smith-Porter Ship Co. v. Rohde, 1922, 257 U.S. 469, 42 S.Ct. 157, 66 L.Ed. 321, the Court held that in view of its exclusive features the Workmen's Compensation Act of the State of Oregon abrogated the right of the injured employee which would otherwise exist to recover damages in an admiralty court. The employee, a carpenter, was injured while working on a partially completed vessel lying at a dock in the Willamette River, at Portland, Oregon, which river is a part of the navigable waters of the United States. The Court held that jurisdiction in admiralty existed because the injury occurred on navigable waters. The Court stated, 257 U.S. at page 475, 42 S.Ct. at page 158:

"The contract for constructing 'The Ahala' was nonmaritime, and although the incompleted structure upon which the accident occurred was lying in navigable waters, neither Rohde's general employment, nor his activities at the time, had any direct relation to navigation or commerce. Thames Towboat Co. v. The Schooner 'Francis McDonald', 254 U.S. 242, 41 S.Ct. 65, 65 L.Ed. 245. The injury was suffered within a State whose positive enactment prescribed an exclusive remedy therefor. And as both parties had accepted and proceeded under the statute by making payments to the Industrial Accident Fund it cannot properly be said that they consciously contracted with each other in contemplation of the general system of maritime law. Union Fish Co. v. Erickson, 248 U.S. 308, 39 S.Ct. 112, 63 L.Ed. 261. Under such circumstances regulation of the rights, obligations and consequent liabilities of the parties, as between themselves, by a local rule would not necessarily work material prejudice to any characteristic feature of the general maritime law, or interfere with the proper harmony or uniformity of that law in its international or interstate relations. Southern Pacific Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086; Western Fuel Co. v. Garcia, 257 U.S. 233, 42 S.Ct. 89, 66 L.Ed. 210."

In Alaska Packers' Ass'n v. Industrial Accident Commission, 1928, 276 U.S. 467, 48 S.Ct. 346, 72 L.Ed. 656, the injured workman was a resident of California and was employed by a California corporation to do work in Alaska. He agreed to go to Alaska as a seaman and after ar-

riving in Alaska to work as directed. He made nets, fixed up boats, and served as a fisherman on one of them. He was injured while attempting to push a stranded fishing boat off the beach. The Supreme Court held that, assuming the injury to be within the admiralty jurisdiction, the injured employee was not engaged "in any work so directly connected with navigation and commerce that to permit the rights of the parties to be controlled by the local law would interfere with the essential uniformity of the general maritime law." Thereafter this Court upheld the application of the California Workmen's Compensation Act to two similarly employed cannery workers who met death in the wreck of a fishing schooner at sea. Alaska Packers Ass'n v. Marshall, 9 Cir., 95 F.2d 279. See also Millers' Indemnity Underwriters v. Braud, 1926, 270 U.S. 59, 46 S.Ct. 194, 70 L.Ed. 470.

The decedent was employed in a non-maritime industry and performed no maritime work. As stated by the district court, "Indeed the only aspect of this case which gives it any maritime flavor whatsoever is the locale of the accident." King v. Pan American World Airways, supra [166 F.Supp. 139]. Our study of the decisions of the Supreme Court above cited lead us to the conclusion that there is no constitutional barrier to the application of the California Workmen's Compensation Act to the facts of this case. In reaching that conclusion we have carefully reviewed the decisions of the Supreme Court in Standard Dredging Co. v. Murphy, 1943, 319 U.S. 306, 63 S.Ct. 1067, 87 L.Ed. 1416, and Pennsylvania Railway Co. v. O'Rourke, 1953, 344 U.S. 334, 73 S.Ct. 302, 97 L.Ed. 367, cited and relied upon by the appellant.

■ Is the California Workmen's Compensation Act abrogated by the Death on the High Seas Act? The Death on the High Seas Act was enacted to fill a void in the maritime law which was found to exist by the Supreme Court in The Harrisburg, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358. The Act provides an admiralty remedy for wrongful death where none existed before. The language of the Act does not purport to supersede a remedy afforded by a state workmen's compensation act for a death occurring on the high seas. Section 7 of the Act (supra) expressly provides that the provisions of any state statute giving or regulating rights of actions or remedies for death shall not be affected by the Act. The attitude of Congress at, prior and subsequent to the enactment of the Act toward state workmen's compensation acts was extremely friendly, as clearly reflected in the Congressional Acts declared unconstitutional in the Jensen, Knickerbocker and Dawson cases, supra. Decisions of the Supreme Court as cited supra hold that state workmen's compensation acts which provide an exclusive remedy to injured employees supersede the otherwise existing admiralty remedy for personal injuries in situations where the application of the state acts does not interfere with the uniformity of the maritime law. That the Death on the High Seas Act may have abrogated state wrongful death statutes for death occurring on the high seas is not persuasive that the Act likewise abrogates state workmen's compensation remedies. State wrongful death statutes require proof of fault. This same requirement is embodied in the Death on the High Seas Act. State wrongful death statutes in general do not purport or intend to apply outside the state's own boundaries. Uniformity perhaps in this field can only be achieved under the Death on the High Seas Act. Recovery under the Act may be uncertain and long delayed. The factors that might lead to the conclusion that the Death on the High Seas Act supplants or supersedes state wrongful death statutes do not apply and are not relevant to state workmen's compensation acts. Under such acts, compensation is payable without proof of fault but only on the basis of status as an employee. If death results in the course of employment, relief is prompt and certain.

In contending that the Death on the High Seas Act extends to wrongful death of employees, appellant has called to our

attention the following cases: Pollard v. Seas Shipping Co. Inc., 2 Cir., 1945, 146 F.2d 875, 877; The Black Gull, 2 Cir., 1936, 82 F.2d 758, 759; Decker v. Moore-McCormack Lines, Inc., D.C.Mass.1950, 91 F.Supp. 560, 561; Batkiewicz v. Seas Shipping Co., D.C.N.Y.1943, 53 F.Supp. 802, 803; The Four Sisters, D.C.Mass. 1947, 75 F.Supp. 399, 400. In the Pollard case, the plaintiff sued under the Jones Act, (46 U.S.C.A. § 688), as administratrix of her husband's estate for damages for his death while in the course of his employment as a fireman on the "S.S. Algic" owned by the defendant. The jury returned a verdict for the plaintiff, and on appeal the defendant argued that drowning was not covered by the Jones Act. The Circuit Court affirmed the judgment. The Black Gull case involved an action to recover damages for the death of a harbor pilot killed by the negligence of a ship about to take him aboard. In sustaining the judgment against the defendant, the Court stated at page 761 of 82 F.2d: "We have assumed that a compulsory pilot is not an employee of the vessel in the sense that a member of her crew is such. Therefore any duty of protection owed to him * * * must rest on some other basis than employment." The Decker case involved the deaths of two seamen killed in a collision between two vessels. Actions to recover damages were brought not against the vessel operated by the decedents' employer, but against the owner of the other vessel. In the Batkiewicz case, the court permitted plaintiff to amend by adding a count under the Death on the High Seas Act to a count under the Jones Act. In the Four Sisters case, which also involved the death of a seaman, the question dealt with was whether or not an action under the Jones Act excluded a remedy under the Death on the High Seas Act. It is to be noted that all of the cases cited involved seamen. None involved a state workmen's compensation act with its exclusive remedy provision. None involved the substantive question of law presented by the instant case.

Appellant makes reference to the "twilight zone" cases under which appellant states that resort may be had at the election of the claimant to either a federal or state forum offering concurrent rights and remedies, and cites Davis v. Department of Labor, 317 U.S. 249, 63 S.Ct. 225, 87 L.Ed. 246, and Hahn v. Ross Island Sand & Gravel Co., 358 U.S. 272, 79 S.Ct. 266, 268, 3 L.Ed.2d 292. As stated by the Supreme Court in the Hahn case the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq., does not apply if recovery for the disability or death through workmen's compensation may validly be provided by State law. The "twilight zone" was created in the Davis case, and as stated by Mr. Justice Stewart in his dissenting opinion in the Hahn case, "was a practical solution to a practical problem, a problem stemming from Southern Pacific Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086, and one which 25 years of post-Jensen history had failed to solve. The problem was how to assure to injured waterfront employees the simple, prompt, and certain protection of workmen's compensation which Congress had clearly intended to give in enacting the federal statute. See 317 U.S. at page 254, 63 S.Ct. at page 228. The Davis decision in effect told the injured employee that in a doubtful case he would be assured of workmen's compensation whether he proceeded under a state workmen's compensation act or the federal statute." In the Davis case the occupation of the petitioner's decedent was in the "twilight zone". The Supreme Court of the State of Washington annulled an award to petitioner under the State Workmen's Compensation Law. The Supreme Court of the United States reversed and sustained the award. In the Hahn case, the Supreme Court stated:

"As to cases within this 'twilight zone,' Davis, in effect, gave an injured waterfront employee an election to recover compensation under either the Longshoremen's Act or the Workmen's Com-

pensation Law of the State in which the injury occurred. It seems plain enough that petitioner's injury occurred in the 'twilight zone,' and that recovery for it 'through workmen's compensation proceedings,' could have been, and in fact was, validly 'provided by State law'—the Oregon Workmen's Compensation Act. Ore.Rev.Stat. §§ 656.002–656.-990. Therefore, the Longshoremen's Act did not bar petitioner's claim under state law. But since his employer had elected to reject them, the automatic compensation provisions of the Oregon Workmen's Compensation Act did not apply to the claim. Section 656.024 of that law provides, however, that when an employer has elected to reject the Act's automatic compensation provisions his injured employee may maintain in the courts a negligence action for damages. Of course, the employee could not do this if the case were not within the 'twilight zone,' for then the Longshoremen's Act would provide the exclusive remedy. Since this case is within the 'twilight zone,' it follows from what we held in Davis that nothing in the Longshoremen's Act or the United States Constitution prevents recovery."

In the instant case decedent's employment was not maritime. The California Workmen's Compensation Act was in full force and effect. There was no federal workmen's compensation act in effect. We find nothing in the "twilight zone" cases which ousts the California State Workmen's Compensation Act, or permits appellant to elect between it and the Death on the High Seas Act. To permit such an election would destroy the exclusive remedy provision which is an essential element to the California Workmen's Compensation Act.

In contending that the California Workmen's Compensation laws furnish no basis for the judgment of the district court, appellant relies on the case of Schellenger v. Zubik, D.C., 170 F.Supp. 92. The question presented in that case was whether or not a seaman who signs a state workmen's compensation agree-

ment, receives payments thereunder, and executes a final receipt is barred from his right of recovery under the Jones Act and under the doctrine of unseaworthiness. We do not find this case apposite. We have heretofore pointed out the non-maritime character of the decedent's employment and the exclusive provision of the California Workmen's Compensation Act which appellee relies upon in this case. We likewise are of the view that Occidental Indem. Co. v. Industrial Accident Commission, 24 Cal.2d 310, 149 P.2d 841, is not in point. In that case the California Supreme Court annulled an industrial accident award in the case of a seaman injured in the course of his employment. The Court held that seamen are governed by admiralty law over which federal law is paramount. The Betsy Ross case, 9 Cir., 145 F.2d 688, adds nothing since the same parties, the same injuries, and the same employment were involved in this case as were involved in the Occidental Indem. Company case. This Court agreed with the State Court that employment of the injured workman was maritime in character, which fact deprived the Industrial Accident Commission of the State of California of jurisdiction. Finally, under this head appellant contends that Section 3203, supra, of the California Workmen's Compensation Act makes such law self-subordinating to the Death on the High Seas Act. We feel that this point has been disposed of adversely to such contention by what has already been said in this opinion.

Appellant's final contention is that under the decisions of this Court in Higa v. Transocean Air Lines, 9 Cir., 230 F.2d 780, and Trihey v. Transocean Air Lines, Inc., 9 Cir., 255 F.2d 824, we are compelled to hold that the Death on the High Seas Act abrogated the remedy afforded under the California Workmen's Compensation Act. We do not agree. In the Higa case, Higa was a passenger on an airplane which crashed in the Pacific Ocean 300 to 400 miles from Wake Island, when flying toward Honolulu. The ad-

ministrator of Higa's estate instituted an action alleging that Higa's death was caused by the plane crashing into the ocean. The action for damages was based on the Death on the High Seas Act and was brought as a common law civil suit rather than in admiralty. The district court dismissed the action because the action was not instituted on the admiralty side of the court. This Court affirmed the judgment of dismissal. The substantive question of law presented to us in this case was not involved in the Higa case. Although the Court by way of dictum expressed the view that a local wrongful death statute was not superseded by the Death on the High Seas Act, the wrongful death statute of the Territory of Hawaii was not mentioned in the opinion except in a footnote noting the existence of such an act. The Trihey case involved an action in admiralty for the wrongful death on the high seas of a passenger in an airplane which crashed. The district court found no negligence on the part of the defendants. This Court affirmed the judgment on the ground it could not say the findings of the district court were erroneous. Again the question of substantive law involved in the present case was not present in the Trihey case, nor even did it involve a local wrongful death statute. Appellant also relies on D'Aleman v. Pan American World Airways, 2 Cir., 259 F.2d 493. The decedent was a passenger on the defendant's airplane, flying from Puerto Rico to New York. Because of engine trouble and weather conditions the plane proceeded to Virginia where it made a normal landing. The passengers were advised while enroute that one engine was being "feathered" and that the flight would be on the three remaining engines, and because of weather conditions the plane would land in Virginia. Several days after landing the decedent died in New York. The plaintiff's first cause of action, based upon the Death on the High Seas Act, alleged that the deceased became so terrified by the "feathering" of the engine and the announcement of the unscheduled landing in Virginia that he went into a state of shock which resulted in his death. The second cause of action was based upon alleged failure of the defendant to provide adequate medical care to the deceased. None of the workmen's compensation laws were involved. The district court, under the first cause of action, sitting without a jury, found no negligence. A jury sitting under the second cause of action found likewise. The Circuit Court found that the first cause of action was properly heard in admiralty without a jury, and that the ruling of the district court in excluding evidence offered by the plaintiff under the second cause of action was proper. This case does not bear on the specific problem before us.

■ We conclude that under the stipulated facts of this case and the applicable law appellant's sole remedy against the defendant is under the California Workmen's Compensation Act, and that the judgment of the district court must be and is hereby affirmed.