[Civ. No. 60585. Second Dist., Div. One. May 20, 1982.]

MATTHEW HAMILTON, Plaintiff and Appellant, v.
COUNTY OF LOS ANGELES, Defendant and Respondent.

COUNSEL

Magana, Cathcart, McCarthy & Pierry, Michael D. Moorhead and Mark S. Rader for Plaintiff and Appellant.

John H. Larson, County Counsel, and Charles Vinson Tackett, Deputy County Counsel, for Defendant and Respondent.

OPINION

**DALSIMER, J.**—Plaintiff, Matthew Hamilton, appeals from the judg-

ment entered in favor of defendant, County of Los Angeles, after a court trial in his action under the Jones Act (46 U.S.C. § 688) and the general maritime law.

Plaintiff was employed as a lifeguard and a rescue boat lieutenant by the County of Los Angeles and was permanently assigned to the rescue vessel *Bay Watch Avalon* by the county's department of beaches. He had been assigned to that vessel from 1970 until the accident in 1976. During this period of time, approximately 75 percent of his time was spent aboard the vessel. The *Bay Watch* is a 31-foot, rough water rescue work vessel. It is powered by twin Chrysler engines. The vessel operated in an area all around Catalina Island up to approximately five miles off the island. Plaintiff's duties included maintenance and operation of the rescue vessel and scuba diving.

On January 25, 1976, following a scuba dive from the *Bay Watch Avalon* undertaken by plaintiff within the course of his duties, plaintiff became afflicted with caisson disease, the bends, and was thereby permanently disabled. The purpose of the dive was to survey a reef located approximately 200 yards offshore for possible establishment of an underwater park. The maximum depth planned for the dive was 120 feet. During the dive plaintiff relied on a depth gauge supplied by the county to calculate the maximum period of time that he could safely remain underwater. Plaintiff was later informed by the captain of the rescue boat division that the depth gauge plaintiff had used was inaccurate. After becoming afflicted with caisson disease, plaintiff received workers' compensation benefits from the state and received benefits from the disability retirement system of the County of Los Angeles. Defendant's second affirmative defense to the within action alleged that plaintiff's only remedy was under workers' compensation.

The trial court found that the County of Los Angeles Department of Beaches' activities are a necessary and legitimate exercise of government power and primarily a function of local concern. The trial court also found that plaintiff's contract with the County of Los Angeles was not maritime in nature. The trial court further found that while engaged in his scuba diving activities, plaintiff was a seaman. The trial court made no findings on the issues of causation, liability, or damages.

The trial court concluded that plaintiff's only remedy was pursuant to the workers' compensation laws of the State of California and that ap-

plication of the exclusive remedy provision of Labor Code section 3601[1] creates no material prejudice to the characteristic features of the general maritime law or the Jones Act and does not interfere with the uniformity and harmony of that body of law.[2]

## DISCUSSION

The principal issue in this appeal is whether the exclusive remedy provision of Labor Code section 3601 bars a seaman employed by a political subdivision of the state and injured in the course of his employment while engaged in activities as a seaman from recovering damages from his employer under the Jones Act or under the general maritime law.

## 1. The Requirement That State Legislation Not Interfere With the Uniformity of the Maritime Law.

■ It has long been recognized that state statutes that conflict with admiralty law as developed by the federal courts and by Congress will not be given effect if their application would materially prejudice the uniformity of the maritime law.

In *Workman* v. *New York City, Mayor & c.* (1900) 179 U.S. 552 [45 L.Ed. 314, 21 S.Ct. 212], a fireboat owned and operated by the City of New York collided with another vessel while approaching a warehouse to extinguish a fire. The court held that the public nature of the vessel's firefighting service afforded it no immunity from liability in admiralty. (*Id.,* at p. 570 [45 L.Ed. at p. 324].) The court also held that the local law of New York, which was in conflict with federal maritime law, was preempted by the maritime law. (*Id.* at pp. 557-563 [45 L.Ed. at pp. 319-321].)

---

[1]Labor Code section .3601 provides in pertinent part as follows: "(a) Where the conditions of compensation exist, the right to recover such compensation, pursuant to the provisions of this division is, except as provided in Section 3706, the exclusive remedy for injury or death of an employee against the employer or against any other-employee of the employer acting within the scope of his employment, except that an employee, or his dependents in the event of his death, shall, in addition to the right to compensation against the employer, have a right to bring an action at law for damages against such other employee, as if this division did not apply, in either of the following cases: [¶] (1) When the injury or death is proximately caused by the willful and unprovoked physical act of aggression of such other employee. [¶] (2) When the injury or death is proximately caused by the intoxication of such other employee."

[2]The "saving to suitors" clause of 28 United States Code section 1333 provides the state courts with subject matter jurisdiction to determine admiralty cases where the action is in personam. (*Blevens* v. *Sfetku* (1968) 259 Cal.App.2d 527, 531 [66 Cal.Rptr. 486]; see *Occidental Ind. Co.* v. *Ind. Acc. Com.* (1944) 24 Cal.2d 310, 312 [149 P.2d 841].)

The *Workman* court reasoned as follows: "The proposition then which we must first consider may be thus stated: Although by the maritime law the duty rests upon courts of admiralty to afford redress for every injury to person or property where the subject-matter is within the cognizance of such courts and when the wrongdoer is amenable to process, nevertheless the admiralty courts must deny all relief whenever redress for a wrong would not be afforded by the local law of a particular State or the course of decisions therein. ... [¶] The practical destruction of a uniform maritime law which must arise from this premise, is made manifest when it is considered that if it be true that the principles of the general maritime law giving relief for every character of maritime tort where the wrongdoer is subject to the jurisdiction of admiralty courts, can be overthrown by conflicting decisions of state courts, it would follow that there would be no general maritime law for the redress of wrongs, as such law would be necessarily one thing in one State and one in another; one thing in one port of the United States and a different thing in some other port.... That the confusion to result would amount to the abrogation of a uniform maritime law is at once patent." (*Id.*, at pp. 557-558 [45 L.Ed. at p. 319].)

The basis for determining whether state statutes affecting admiralty law may be given effect was clarified in *Southern Pacific Co. v. Jensen* (1917) 244 U.S. 205 [61 L.Ed. 1086, 37 S.Ct. 524]: "[I]t would be difficult, if not impossible, to define with exactness just how far the general maritime law may be changed, modified, or affected by state legislation. That this may be done to some extent cannot be denied. ... Equally well established is the rule that state statutes may not contravene an applicable act of Congress or affect the general maritime law beyond certain limits. They cannot authorize proceedings *in rem* according to the course in admiralty, [citations]; nor create liens for materials used in repairing a foreign ship, [citation]. [Citation.] And plainly, we think, no such legislation is valid if it contravenes the essential purpose expressed by an act of Congress or works material prejudice to the characteristic features of the general maritime law or interferes with the proper harmony and uniformity of that law in its international and interstate relations." (*Id.*, at p. 216 [61 L.Ed. at p. 1098].)

State workmen's compensation laws have been held not to constitute a significant interference with the uniformity of the maritime law in cases wherein the location of the injury or the nature of the employment contract involved few maritime characteristics. In *Grant Smith-*

*Porter Co. v. Rohde* (1922) 257 U.S. 469 [66 L.Ed. 321, 42 S.Ct. 157, 25 A.L.R. 1008] a carpenter was injured while working on a partially completed vessel. The court found that the parties' contract was not maritime in nature and that the rights and liabilities of the parties had no direct relation to navigation. Stating that "... as to certain local matters regulation of which would work no material prejudice to the general maritime law, the rules of the latter might be modified or supplemented by state statutes," (*id.*, at p. 477 [66 L.Ed. at p. 324]), the court held that the application of Oregon's workmen's compensation law would not materially affect the uniformity of the maritime law. (*Ibid.*) In *Millers' Underwriters v. Braud* (1926) 270 U.S. 59 [70 L.Ed. 470, 46 S.Ct. 194], a diver who submerged himself from a floating barge 35 feet from the bank of a navigable river died of suffocation when his air supply failed. The diver had been employed to saw timbers that were an obstruction to navigation. The court held that the provisions of the state workmen's compensation act controlled because the case involved a matter of local concern as to which regulation by the state would not materially interfere with the uniformity of the general maritime law. (*Id.*, at pp. 64-65 [70 L.Ed. at p. 472].)

In *London Co. v. Industrial Comm'n* (1929) 279 U.S. 109 [73 L.Ed. 632, 49 S.Ct. 296], a sailor employed by Morris Pleasure Fishing, Inc., a corporation engaged in maintaining and operating fishing vessels from the Santa Monica Bay to fishing grounds three to five miles from the bay, drowned while attempting to rescue one of Morris Pleasure's vessels during a storm. The *London Co.* court recognized that the rescue of a vessel in distress is a duty which is clearly maritime and that the deceased was acting as a seaman while so engaged. (*Id.*, at p. 123 [73 L.Ed. at p. 636].) The court held that application of the exclusive remedy provision of the California workmen's compensation law to the mother and stepfather of the deceased would violate the United States Constitution because of the material prejudice to the characteristic features of the general maritime law that would result therefrom. (*Id.*, at p. 125 [73 L.Ed. at p. 637].) The Supreme Court stated, "There was no feature of the business and employment that was not purely maritime. To hold that a seaman, engaged and injured in an employment purely of admiralty cognizance, could be required to change the nature or conditions of his recovery under a state compensation law, would certainly be prejudicial to the characteristic features of the general maritime law." (*Id.*, at p. 123 [73 L.Ed. at p. 636].) The *London Co.* court distinguished *Grant Smith-Porter Co. v. Rohde, supra*, 257 U.S. 469, and

*Millers' Underwriters* v. *Braud, supra*, 270 U.S. 59, as follows: "Nothing in these cases could apply to the case before us. They may be said to be of an amphibious character. They have an admiralty feature about them in the locality where they occurred . . . . But the contract in the *Rohde* case was non-maritime, the ship was incomplete, and being completed under a non-maritime contract; both parties had made a non-maritime contract with reference to their liabilities and not in contemplation of the admiralty law. The *Braud* case was one of a maritime tort. But it had no characteristic feature of the general maritime law except locality, and it was very like, in its relation to the state law, to the *Rohde* case. The employment was not maritime, and the transaction and the circumstances thus seemed to have but one characteristic that was maritime." (*Id.*, at p. 121 [73 L.Ed. at pp. 635-636].)

## 2. Plaintiff's Employment Contract Was Maritime in Nature.

The trial court found that plaintiff's duties as a lifeguard "bore no similarity to the traditional work of a seaman," but that at the time of the incident in question plaintiff was a seaman. The trial court also found "That it is true that the County of Los Angeles Department of Beach's [*sic*] lifeguard activities have only a remote connection with either commerce or navigation" and that "[plaintiff's] contract of employment with the County of Los Angeles was not maritime in nature."

■ The finding of the trial court that plaintiff's contract of employment was not maritime in nature is unsupported by the evidence and is in conflict with the court's findings that plaintiff was assigned to the rescue vessel known as *Bay Watch Avalon* and that plaintiff's duties involved rescue vessel operation and scuba diving in the waters surrounding Catalina Island.

Plaintiff's duties as rescue boat lieutenant for the county's department of beaches involved rescuing persons and vessels in proximity to the beach areas of Santa Catalina Island, the maintenance and operation of the *Bay Watch Avalon,* and scuba diving activities. Plaintiff's operation of the *Bay Watch Avalon* included both line-tending and helmsman duties. Plaintiff was responsible for sanding and painting the boat, working on the engines of the vessel, and cleaning the bottom of the boat. Plaintiff's duties also included navigation of the vessel. Since a substantial part of the duties plaintiff was required to perform were maritime in nature, plaintiff's contract of employment must clearly be viewed as maritime. In contrast with the situation in *Millers' Under-*

*writers* v. *Braud, supra,* 270 U.S. 59, plaintiff's employment with the county contained few characteristics that were not maritime; the majority of plaintiff's duties involved work that is traditionally performed by seamen.

"From its inception, the Jones Act has been liberally interpreted to extend rather than restrict admiralty's traditional protection of those exposed to the risks of the sea. [Citations.] This has largely been accomplished by expanding the definition of such terms as 'seaman,' [and] 'member of a crew' ...." (*Soucie* v. *Trautwein Bros.* (1969) 275 Cal.App.2d 20, 24 [79 Cal.Rptr. 671].) In *Howard* v. *Global Marine, Inc.* (1972) 28 Cal.App.3d 809 [105 Cal.Rptr. 50], we recognized this policy of liberal interpretation of the Jones Act and we quoted at length from *Soucie.* We noted that in *Smith* v. *Union Oil Co.* (1966) 241 Cal.App.2d 338, 344 [50 Cal.Rptr. 499], cert. den., 385 U.S. 931 [17 L.Ed.2d 213, 85 S.Ct. 291], a deep-sea diver who died as a result of the bends was held to be a seaman under the Jones Act. In *Howard,* a plaintiff who was assigned to an offshore drilling vessel for approximately two and one-half weeks was injured while scuba diving within the course of his duties. His principal duties were maintenance and repair of the vessel, scuba diving, and supervision of other divers. We held that the plaintiff had a sufficient connection with the vessel that the trial court had correctly instructed the jury that the plaintiff was a seaman. (*Howard* v. *Global Marine, Inc., supra,* 28 Cal.App.3d 809, 815.) In the context of the special purpose vessel there involved, we observed, "Where a special purpose vessel is being used for its designed purpose, the injured worker is a 'seaman' within the Jones Act if he was assigned permanently to the vessel or performed a substantial part of his work on the vessel, and his work contributed to the function of the vessel or to the accomplishment of its mission." (*Id.,* at p. 812.) "The traditional formulation of the requirements for identifying a seaman are: (1) he must have a more or less permanent connection with (2) a vessel in navigation and (3) the capacity in which he is employed or the duties which he performs must contribute to the function of the vessel, the accomplishment of its mission or its operation or welfare in terms of its maintenance ...." (*Guidry* v. *South Louisiana Contractors, Inc.* (5th Cir. 1980) 614 F.2d 447, 452.)

Plaintiff herein had a far more permanent relationship with the vessel to which he was assigned than did the plaintiff in *Howard.* The undisputed evidence that plaintiff was assigned to the *Bay Watch* from 1970 until the accident in 1976 is sufficient to support a finding that plaintiff

was permanently assigned to that vessel. As with the plaintiff in *Howard*, his injury occurred while scuba diving. Unlike the plaintiff in *Howard*, his duties also included navigation of the vessel. Thus, plaintiff's contract of employment was of a distinctly maritime nature. Application of the exclusive remedy provisions of Labor Code section 3601 under these circumstances would work material prejudice to the characteristic features of the Jones Act and the general maritime law. (See *London Co.* v. *Industrial Comm'n, supra*, 279 U.S. 109.)

### 3. The Exclusive Remedy Provision of Labor Code Section 3601 Does Not Constitute a Bar to Plaintiff's Rights Under the Jones Act.

The Jones Act extends the rights guaranteed by statute to railroad employees in the event of personal injury occurring in the course of employment to seamen. (46 U.S.C. § 688.) The Jones Act provides in pertinent part as follows: "Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply . . . ." (*Ibid.*)

A penalty provision of the federal Safety Appliance Act (45 U.S.C. § 6) was held applicable to state-owned railroads used intrastate in *United States* v. *California* (1936) 297 U.S. 175 [80 L.Ed. 567, 56 S.Ct. 421]. The court stated, "The federal Safety Appliance Act is remedial, to protect employees and the public from injury because of defective railway appliances, [citations], and to safeguard interstate commerce itself from obstruction and injury due to defective appliances upon locomotives and cars used on the highways of interstate commerce, even though their individual use is wholly intrastate. [Citations.] The danger to be apprehended is as great and commerce may be equally impeded whether the defective appliance is used on a railroad which is state-owned or privately-owned. No convincing reason is advanced why interstate commerce and persons and property concerned in it should not receive the protection of the act whenever a state, as well as a privately-owned carrier, brings itself within the sweep of the statute, or why its all-embracing language should not be deemed to afford that protection." (*Id.*, at p. 185 [80 L.Ed. at p. 573].) In *California* v. *Taylor* (1957) 353 U.S. 553 [1 L.Ed.2d 1034, 77 S.Ct. 1035], the United States Supreme Court held that the Railway Labor Act of May 20, 1926 (45 U.S.C. § 151 et seq.) applies to state-owned railroads engaged

in interstate commerce (*id.,* at pp. 566-568 [1 L.Ed.2d at pp. 1042-1043]) and pointed out that nowhere in that act were state railroads excluded. (*Id.,* at p. 564 [1 L.Ed.2d at p. 1041].)

In *Petty* v. *Tennessee-Missouri Comm'n* (1959) 359 U.S. 275, 282-283 [3 L.Ed.2d 804, 810-811, 79 S.Ct. 785], the Supreme Court held that the Jones Act applies to states as employers. The court rejected Missouri's claim of immunity to an action in tort by the surviving spouse of the deceased employee, stating: "[W]e can find no more reason for excepting state or bi-state corporations from 'employer' as used in the Jones Act than we could for excepting them either from the Safety Appliance Act (*United States* v. *California,* 297 U. S. 175) or the Railway Labor Act (*California* v. *Taylor,* 353 U. S. 553). In the latter case we reviewed at length federal legislation governing employer-employee relationships and said, 'When Congress wished to exclude state employees, it expressly so provided.' 353 U. S., at 564. The Jones Act (46 U. S. C. § 688) has no exceptions from the broad sweep of the words 'Any seaman who shall suffer personal injury in the course of his employment may' etc. The rationale of *United States* v. *California, supra,* and *California* v. *Taylor, supra,* makes it impossible for us to mark a distinction here and hold that this bi-state agency is not an employer under the Jones Act." (*Ibid.*)

In *Roberts* v. *City of Plantation* (5th Cir. 1977) 558 F.2d 750, 751, the court of appeals held that the trial court erred in dismissing an action brought under the Jones Act by a policeman who alleged that the vessel to which he was assigned to patrol a canal had offered him inadequate protection from assault. The court stated that if plaintiff could prove himself entitled to recovery under the Jones Act, the exclusive remedy provisions of Florida's workmen's compensation statutes would not control.

4. The Commerce Clause and Admiralty Power Under the Federal Constitution Both Support Application of the Jones Act and Federal Maritime Law to the County as an Employer.

■ In finding XI, the trial court found "That it is true that the County of Los Angeles Department of Beach's [*sic*] activities are a necessary and legitimate exercise of Government power and are primarily a function of local concern with the objective of providing a police power service to the citizens of the County of Los Angeles." In finding VIII, the trial court found "That it is true that the County of Los Angeles

Department of Beach's [*sic*] lifeguard activities have only a remote connection with either commerce or navigation."

The trial court's finding that the department of beaches' activities "are primarily a function of local concern with the objective of providing a police power service to the citizens of Los Angeles County" is not supported by the evidence. The evidence established that the department of beaches, and the *Bay Watch* in particular, rescues vessels transporting merchandise in interstate commerce as well as vessels that are transporting tourists from the mainland in California, some of whom come from all over the United States. This function of the department of beaches, which is a primary function of the *Bay Watch*, can hardly be characterized as local in character or as not affecting commerce and navigation.

At oral argument, defendant cited *Fry* v. *United States* (1975) 421 U.S. 542 [44 L.Ed.2d 363, 95 S.Ct. 1792] in support of its contention that the county is immune from liability. In *Fry*, the Supreme Court stated, "While the Tenth Amendment has been characterized as a 'truism,' stating merely that 'all is retained which has not been surrendered,' [citation], it is not without significance. The Amendment expressly declares the constitutional policy that Congress may not exercise power in a fashion that impairs the States' integrity or their ability to function effectively in a federal system." (*Id.*, at p. 547, fn. 7 [44 L.Ed.2d at p. 369].) This language was quoted by the Supreme Court in *National League of Cities* v. *Usery* (1976) 426 U.S. 833, 842-843 [49 L.Ed.2d 245, 252, 96 S.Ct. 2465].

In *National League of Cities*, a number of states and metropolitan governments challenged as unconstitutional under the Tenth Amendment to the United States Constitution the 1974 amendments (88 Stat. 55) to the Fair Labor Standards Act (29 U.S.C. § 201 et seq.) which required states and their political subdivisions to adhere to minimum wage and overtime provisions of that act. Their challenge was based on the prohibitive financial impact that the amendments would allegedly have on police and fire department functions. After quoting the portion of the footnote from *Fry* quoted above, the court held "insofar as the challenged amendments operate to directly displace the States' freedom to structure integral operations in areas of traditional governmental functions, they are not within the authority granted Congress by Art. I, § 8, cl. 3." (*National League of Cities* v. *Usery, supra*, 426 U.S. 833, 852, fn. omitted [49 L.Ed.2d at pp. 257-258].) The court gave as exam-

ples of such traditional governmental functions fire prevention, police protection, sanitation, public health, and parks and recreation. (*Id.*, at p. 851 [49 L.Ed.2d at p. 257].) The court appeared particularly concerned that "[t]he requirement imposing premium rates upon any employment in excess of what Congress has decided is appropriate for a governmental employee's workweek ... appears likely to have the effect of coercing the States to structure work periods in some employment areas, such as police and fire protection, in a manner substantially different from practices which have long been commonly accepted among local governments of this Nation." (*Id.*, at p. 850 [49 L.Ed.2d at p. 256].) The impact on the common use of volunteer firemen was also mentioned. (*Ibid.*)

We do not perceive the application of traditional maritime rights to seamen employed by the county's department of beaches to involve the same type of displacement of the freedom to structure governmental functions as was present in *National League of Cities.* Seamen have traditionally been afforded liberal rights of recovery under the Jones Act. (*Soucie* v. *Trautwein Bros., supra*, 275 Cal.App.2d 20, 24.) Ever since *Petty* v. *Tennessee-Missouri Comm'n, supra*, 359 U.S. 275, it has been clear that these rights apply even when the state or a political subdivision thereof is the employer, and defendant's contract with plaintiff was made with an implied awareness of these rights. (Cf. *Transportation Union* v. *Long Island R.* (1982) 455 U.S. 678, 685-690 [71 L.Ed.2d 547, 553-557, 102 S.Ct. 1349].)

Our research has not disclosed any decisions expressly considering whether *National League of Cities* v. *Usery* affects the rights of seamen employed by states or their political subdivisions to recovery under the Jones Act or the federal maritime law. *Roberts* v. *City of Plantation, supra*, 558 F.2d 750, is the only decision we have discovered wherein such an issue was present. Although the court there made no mention of *National League of Cities*, it held that a policeman who is a seaman under the Jones Act is entitled to the Jones Act's traditional protection. *Roberts* thus recognizes the continued viability of the Supreme Court's holdings in *Petty* v. *Tennessee-Missouri Comm'n, supra*, 359 U.S. 275, and *Workman* v. *New York City, Mayor & c., supra*, 179 U.S. 552.

We note that the court in *National League of Cities* expressly reaffirmed its holdings in *United States* v. *California, supra*, 297 U.S. 175, and *California* v. *Taylor, supra*, 353 U.S. 553, both of which were cases on which *Petty* v. *Tennessee-Missouri Comm'n, supra*, 359 U.S.

275, relied. (*National League of Cities* v. *Usery, supra,* 426 U.S. 833, 854-855, fn. 18 [49 L.Ed.2d 245, 259].)

The Supreme Court expressly limited its holding to the commerce clause, stating, "[w]e express no view as to whether different results might obtain if Congress seeks to affect integral operations of state governments by exercising authority granted it under other sections of the Constitution . . . ." (*Id.,* at p. 852, fn. 17 [49 L.Ed.2d at p. 258].)

The Jones Act and the federal maritime law have their source in both the commerce clause (U.S. Const., art. I, § 8, cl. 3) and in the broader scope of the federal admiralty power. (U.S. Const., art. III, § 2; U.S. Const., art. I, § 8, cl. 18; *O'Donnell* v. *Great Lakes Co.* (1943) 318 U.S. 36, 39 [87 L.Ed. 596, 600, 63 S.Ct. 488]; see *London Co.* v. *Industrial Comm'n, supra,* 279 U.S. 109, 124 [73 L.Ed. 632, 637].) Article III, section 2 of the United States Constitution, which provides that the judicial power of the United States shall extend "to all Cases of admiralty and maritime Jurisdiction," impliedly granted Congress the power "to revise and supplement the maritime law" (*Romero* v. *International Term. Co.* (1959) 358 U.S. 354, 361 [3 L.Ed.2d 368, 376, 79 S.Ct. 468]) and impliedly granted the federal courts the power to develop the maritime law. (*Id.,* at pp. 360-361 [3 L.Ed.2d at pp. 375-376].) This federal substantive law is applicable in maritime actions filed in state courts. (*Blevens* v. *Sfetku, supra,* 259 Cal.App.2d 527, 531-532.) In *Panama R. R. Co.* v. *Johnson* (1924) 264 U.S. 375 [68 L.Ed. 748, 44 S.Ct. 391], the United States Supreme Court stated that the purpose of the federal admiralty power is to place the maritime law under national control "because of its intimate relation to navigation and to interstate and foreign commerce." (*Id.,* at p. 386 [68 L.Ed. at p. 752].)

Unlike congressional control over wages or hours, the rule precluding a political subdivision of a state from invoking the exclusive remedy provisions of its state workers' compensation laws does not directly displace the freedom to structure integral governmental operations. In *Hodel* v. *Virginia Surface Min. & Recl. Assn.* (1981) 452 U.S. 264, 288 [69 L.Ed.2d 1, 23, 101 S.Ct. 2352], the Supreme Court clarified its holding in *National League of Cities* v. *Usery, supra,* 426 U.S. 833, stating that an essential requirement for the Tenth Amendment immunity there recognized is the factor that "it must be apparent that the States' compliance with the federal law would *directly* impair their ability 'to structure integral operations in areas of traditional governmental functions.' [Citation.]" (Fn. omitted, italics added.) It is unnec-

essary to decide whether plaintiff's scuba diving was an integral operation of a traditional governmental function because application of the Jones Act or the general maritime law[3] is not a direct impairment of the county's ability to structure the activities of the department of beaches. The impact on the department's operations is at best indirect; the effect is only to require one form of compensation rather than another. Moreover, there was no evidence or finding as to the effect that general maritime law or Jones Act liability would have on the department's operations.

Further, even if the commerce power does not permit application of the Jones Act or the general maritime law to the instant situation, the admiralty power under article III, section 2, which is broader in scope, does permit such application in the present case. The admiralty power under article III, section 2, permits both congressional regulation and federal case law development governing maritime matters because of the need for national uniformity in the area of navigation. (See *Panama R. R. Co.* v. *Johnson, supra*, 264 U.S. 375, 385-387 [68 L.Ed. 748, 752-753].)

Plaintiff's duties bore an essential relation to navigation in that, not only did those duties include navigation of the *Bay Watch* and maintaining the equipment on that vessel, but they also involved rescuing vessels that were in danger, thus assisting in their navigation as well. The scuba diving expedition in which plaintiff was injured also involved navigation by plaintiff wherein plaintiff assisted in discovering the location of the reef. Under the federal admiralty power, the public nature of plaintiff's duties does not defeat his rights as a seaman.

As the public nature of the function of the city's fireboat was not a bar to liability in *Workman*, the public function of the department of beaches' scuba diving activities provides no immunity to the county from liability.[4]

We hold that Labor Code section 3601 does not bar recovery from the employer under the Jones Act or the general maritime law by a seaman injured in the course of his employment while scuba diving even if

---

[3]In *Davids* v. *Akers* (9th Cir. 1977) 549 F.2d 120, 127, it was held that the limitation on Congress' powers recognized in *National League of Cities* v. *Usery, supra*, 426 U.S. 833, applies equally to the power of the federal courts.

[4]Defendant's contention that a vessel solely owned by an agency of the state and engaged solely in a governmental function should be exempt from suit in admiralty is not apposite. The case at bar involves an action against the county, not the *Bay Watch*.

the seaman's usual duties involve the necessary exercise of government police power functions. It is unnecessary to decide whether a plaintiff employed by the county's department of beaches who is injured while performing lifeguard duties of rescuing persons near Catalina Island would be entitled to pursue recovery under the Jones Act or the general maritime law as we are not now presented with that situation.

5. Right to Set Off Workers' Compensation Benefits.

Although the issue has not been raised by the parties, we feel that the question of res judicata or collateral estoppel arising as a result of plaintiff's receipt of workers' compensation benefits should be addressed. Plaintiff's receipt of workers' compensation benefits does not constitute a bar to recovery under the Jones Act (*De Court* v. *Beckman Instruments, Inc.* (1973) 32 Cal.App.3d 628, 635-636 [108 Cal.Rptr. 109]) or the general maritime law (see *ibid.*) on the basis of res judicata or collateral estoppel. (Also see *Gahagan Const. Corporation* v. *Armao* (1st Cir. 1948) 165 F.2d 301, 307, cert. den., 333 U.S. 876 [92 L.Ed. 1152, 68 S.Ct. 905].) Defendant county has the right to set off all benefits plaintiff received under the workers' compensation proceeding if plaintiff obtains a judgment against defendant in this action. (See *Guay* v. *American President Lines* (1947) 81 Cal.App.2d 495, 519 [184 P.2d 539]; *Gahagan Const. Corporation* v. *Armao, supra*, 165 F.2d 301, 307.)

The factors necessary to establish the right to recover under state workers' compensation are different from those factors necessary to a determination whether a plaintiff may recover under the Jones Act or the general maritime law. (*De Court* v. *Beckman Instruments, Inc., supra*, 32 Cal.App.3d 628; compare Lab. Code, § 3600 with *Mahnich* v. *Southern S. S. Co.* (1944) 321 U.S. 96, 99 [88 L.Ed. 561, 564, 64 S.Ct. 455].) In discussing the issue whether the plaintiffs' right to recover under the Jones Act was barred by their recovery of workmen's compensation, the Court of Appeal in *De Court* v. *Beckman Instruments, Inc., supra*, 32 Cal.App.3d 628, stated: "The rights and duties involved in the Jones Act remedy differ from those under the state compensation act both in their source under the Constitution of the United States [citation] and in their nature as developed by the federal cases. [Citation.] The issues determinative of jurisdiction under the Jones Act are thus far different from those determinative of jurisdiction under the state compensation law. It is not the same controversy once litigated which is

being relitigated, and there is no merger of the cause of action in the compensation award. [Citations.]" (*Id.*, at p. 635.)

Since the trial court declined to make any findings as to liability or damages, it is necessary to remand for a determination of those issues. The judgment is reversed, and the matter is remanded for proceedings consistent with this opinion.

Spencer, P. J., and Lillie, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied July 22, 1982.