557 F.Supp. 1024 (1983)
In re HOLOHOLO LITIGATION.
Barbara K. TRENS, individually and as personal representative of Mike Julio Trens, deceased, Plaintiff,
v.
The UNIVERSITY OF HAWAII, a corporation; the Research Corporation of the University of Hawaii, a corporation; State of Hawaii, a sovereign state; the University of California, a corporation; John Laney; and Arthur F. Stubenberg, Defendants.
Robert RUSECKAS, personal representative of the estate of James Edward Ruseckas, deceased, Plaintiff,
v.
The UNIVERSITY OF HAWAII, a corporation; the Research Corporation of the University of Hawaii, a corporation; State of Hawaii, a sovereign state; the University of California, a corporation; John Laney; and Arthur D. Stubenberg, as personal representative of the estate of Arthur F. Stubenberg, deceased, Defendants.
Lynne Ann HAROUN, individually and as executrix of the estate of Stephan Randall Shannon, deceased, and Joann D. Shannon, Plaintiffs,
v.
The UNIVERSITY OF HAWAII, a corporation; the Research Corporation of the University of Hawaii, a corporation; State of Hawaii, a sovereign state; the University of California, a corporation; Michael Vincent Paulin, as guardian of the property of John Laney, Sr., deceased; and Arthur D. Stubenberg, as personal representative of the estate of Arthur F. Stubenberg, deceased, Defendants.
Youngsook Kim HARVEY, individually and as personal representative of the estate of Robert R. Harvey, deceased; Andrew Kim Weaver; Sarah Kim Weaver; and Susan W. Niemeyer, individually and as personal representative of the estate of Gary C. Niemeyer, deceased, Plaintiffs,
v.
UNIVERSITY OF HAWAII, a corporation; Research Corporation of the University of Hawaii, a corporation; State of Hawaii, a sovereign state; University of California, a corporation; Michael Vincent Paulin, as guardian of the property of John Laney, Sr., deceased, and a legal representative of the estate of John Laney, Sr., deceased; Arthur D. Stubenberg, as personal representative of the estate of Arthur F. Stubenberg, deceased; and Barbara K. Trens, as personal representative of the estate of Mike Julio Trens, deceased, Defendants.
Nancy J. LAIRD, individually, as personal representative of Norman P. Laird, deceased, and as guardian ad litem for Kristine Renee Laird, a minor, Plaintiffs,
v.
The UNIVERSITY OF HAWAII, a corporation; the Research Corporation of the University of Hawaii, a corporation; the University of California, a corporation; Michael Vincent Paulin, as guardian of the property of John Laney, Sr., deceased; Arthur D. Stubenberg, as personal representative of the estate of Arthur F. Stubenberg, deceased, Defendants.
Carol A. CHARNELL, individually, as personal representative of Robert Lewis Charnell, deceased, and as guardian ad litem for Mareline Charnell and Erika Charnell, minors, Plaintiffs,
v.
The UNIVERSITY OF HAWAII, a corporation; the Research Corporation of the University of Hawaii, a corporation; State of Hawaii, a sovereign state; the University of California, a corporation; Michael Vincent Paulin, as guardian of the property of John Laney, Sr., deceased; Arthur D. Stubenberg, as personal representative of the estate of Arthur F. Stubenberg, deceased, Defendants.
*1025 Paul W. ALLEN and Marjorie H. Allen, individually, and Christopher Cobb, as personal representative of the estate of Michael H. Allen, deceased, Plaintiffs,
v.
The UNIVERSITY OF HAWAII, a corporation; the Research Corporation of the University of Hawaii, a corporation; State of Hawaii, a sovereign state; the Regents of the University of California, a corporation; Michael Vincent Paulin, as guardian of the property of John Laney, Sr., deceased; Arthur D. Stubenberg, as personal representative of the estate of Arthur F. Stubenberg, deceased, Defendants.
Civ. Nos. 79-0324A, 79-0324, 79-0353, 79-0583, 79-0631, 80-0053, 80-0054 and 80-0641.
United States District Court, D. Hawaii.
February 10, 1983.
Carlton E. Russell, Long Beach, Cal., David C. McClung, Robert Kimura, Honolulu, Hawaii, for Barbara K. Trens.
Stuart M. Cowan, Robert E. Rau, Honolulu, Hawaii, for Robert Ruseckas.
John S. Edmunds, Charles W. Crumpton, Honolulu, Hawaii, Charles E. Yates, Moriarty, Mikkelborg, Broz, Wells & Fryer, Douglas Hartwich, Short & Cressman, Seattle, Wash., for Lynne Ann Haroun, Joann D. Shannon, Nancy J. Laird, Carol A. Charnell, *1026 Paul W. Allen, Marjorie H. Allen, and Jeffrey S. Grad.
David C. Schutter, Howard Glickstein, Priscilla L. Mills, Honolulu, Hawaii, for Youngsook Kim Harvey, Andrew Kim Weaver, Sarah Kim Weaver, and Susan W. Niemeyer.
Nelson S.W. Chang, Sp. Deputy Atty. Gen., Tany S. Hong, Atty. Gen., State of Hawaii, Honolulu, Hawaii, for the University of Hawaii and State of Hawaii.
Everett Cuskaden, Craig Kugisaki, Bert T. Kobayashi, Jr., Wray H. Kondo, John T. Komeiji, Honolulu, Hawaii, for the Research Corp. of the University of Hawaii.
Richard K. Quinn, Stephen A. Nordyke, Michael M. Payne, Honolulu, Hawaii, for the University of California.
John A. Roney, Honolulu, Hawaii, for Arthur D. Stubenberg.

ORDER
SAMUEL P. KING, Chief Judge.

BACKGROUND
On December 9, 1978, the M/V HOLOHOLO, a 90-foot Alaskan power scow converted to other uses, sailed from Honolulu, Hawaii, on the second of six planned voyages to an ocean thermal energy conversion ("OTEC") station located seventeen nautical miles west of Kawaihae on the Island of Hawaii. The vessel had been chartered by the Research Corporation of the University of Hawaii ("RCUH") pursuant to a subcontract with the University of Hawaii ("UH"), which was in turn operating under a subcontract with defendant The Regents of the University of California ("UC"), which was operating pursuant to a master contract with the United States Department of Energy. The purpose of the voyage was to transport scientists who were conducting oceanographic research. Aboard were the latest purchaser of the vessel, a licensed master, a mechanic, and seven scientists.
The HOLOHOLO did not arrive at Kawaihae on schedule on December 11th. Presumably the vessel sank somewhere near the Hawaiian Islands on or around December 10th. All persons who were on board the vessel are presumed dead. See generally In re HOLOHOLO, 512 F.Supp. 889, 892 & n. 2 (D.Hawaii 1981).
The decedents' survivors have brought this action under the Jones Act, 46 U.S.C. § 688 (1975), the Death on the High Seas Act (DOHSA), 46 U.S.C. §§ 761-767 (1975), and general maritime law. Presently, plaintiffs have joined in a Motion for Partial Summary Judgment as to Workers' Compensation or for Summary Disposition of Certain Material Facts. The State of Hawaii and UH have filed a cross-motion entitled Motion for Summary Judgment and/or Dismissal as to All or Part of the Claims of Plaintiffs Harvey, Weaver, Niemeyer and Allen. In essence, both sides seek partial summary judgment on the question of whether the exclusivity provision of Hawaii's workers' compensation laws bars plaintiffs' recovery under federal law. In the alternative, defendants seek partial summary judgment on all of plaintiffs' nonmaritime claims, on the ground that such claims are excluded by the State's workers' compensation laws.
In addition, defendant UC has filed a related motion seeking partial summary judgment as to claims brought by Lynne Ann Haroun on behalf of decedent Stephan Shannon, who was an employee of UC at the time of his disappearance on board the HOLOHOLO. By its present Order, the Court does not decide UC's related motion but rather examines the arguments presented in that motion only as they relate to the exclusivity of workers' compensation remedies. UC contends, inter alia, that Haroun's federal maritime claims are barred by the exclusivity provision of California's workers' compensation laws, see Cal.Lab. Code § 3601(a) (West Supp.1982), because decedent Shannon was not engaged in maritime employment.
More specifically, UC claims that Shannon was a nuclear physicist rather than an oceanographer, that his maritime experience while working at UC's Laurence Berkeley Laboratory was essentially limited *1027 to two prior cruises, and that he was on board the HOLOHOLO at the time of its disappearance simply to observe the research project. It is undisputed, however, that Shannon was interested in ocean thermal energy research and that he was considering joining the OTEC group in January 1979. Apparently, he was invited to participate in the cruise because one of his duties with the research group would have involved physical oceanography.

DISCUSSION

1. Federal Admiralty Power and the Exclusivity of State Remedies

The preliminary question facing this Court is whether the exclusivity provision of Hawaii's workers' compensation laws even applies to plaintiffs' claims brought under the Jones Act, DOHSA, and general maritime law. Section 386-5 of the Hawaii Revised Statutes provides that the rights and remedies granted under chapter 386 "exclude all other liability of the employer to the employee ... at common law or otherwise, on account of the injury." Hawaii Rev.Stat. § 386-5 (1976). Section 386-7, however, provides that the chapter applies only "to employees and employers engaged in interstate and foreign commerce and to employees in maritime employment and their employers not otherwise provided for by the laws of the United States." Id. § 386-7 (emphasis added).
Defendants urge this Court to adopt a narrow interpretation of section 386-7. In defendants' view, this section was intended to render Hawaii's workers' compensation laws consistent with only certain federal laws, such as the Longshoremen's and Harbor Workers' Compensation Act (LHWCA) and the Federal Employees Compensation Act (FECA), but not with other federal laws, such as the Jones Act, DOHSA, or general maritime law. Defendants have not been able to present this Court with any authority supporting their restrictive interpretation of section 386-7. Assuming that the Court rejects this dubious interpretation of section 386-7, the Court would still have to determine whether decedents were actually engaged in "maritime employment" within the meaning of this section.
Under the circumstances, the Court need not decide these questions of state law. Under federal law, it is well established that any state statutes that conflict with federal maritime law will not be given effect if their application would contravene the essential purposes of or materially prejudice the uniformity of the maritime law. Knickerbocker Ice Co. v. Stewart, 253 U.S. 149, 160, 40 S.Ct. 438, 440, 64 L.Ed. 834 (1920); see Moragne v. States Marine Lines, 398 U.S. 375, 401-02, 90 S.Ct. 1772, 1788, 26 L.Ed.2d 339 (1970); see also In re HOLOHOLO, 512 F.Supp. at 903 (quoting Stewart). More succinctly, remedies that are rooted in federal maritime law are controlling over state-created remedies; a state may not deprive a person of any substantial admiralty rights. Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 409-10, 74 S.Ct. 202, 204-205, 98 L.Ed. 143 (1953).
Whether application of an exclusive remedy in a state's workers' compensation law contravenes the essential purposes of maritime law or affects a substantial admiralty right is sometimes difficult to determine in cases involving few or questionable maritime characteristics. Assuming that admiralty jurisdiction exists in such cases, the availability of federal maritime remedies generally depends upon whether the injured party's employment was maritime in nature. Compare Southern Pacific Co. v. Jensen, 244 U.S. 205, 217-18, 37 S.Ct. 524, 529, 61 L.Ed. 1086 (1917) (exclusive remedy provision in New York workmen's compensation law not applied when stevedore's employment and injuries were maritime in nature); Hamilton v. County of Los Angeles, 131 Cal.App.3d 982, 989-92, 182 Cal.Rptr. 868, 873-75 (1982) (exclusive remedy provision in California workers' compensation law not applied when lifeguard's duties were maritime in nature) with Grant Smith-Porter Ship Co. v. Rohde, 257 U.S. 469, 477-78, 42 S.Ct. 157, 158-159, 66 L.Ed. 321 (1922) (exclusive remedy provision in Oregon workmen's compensation law applied when carpenter injured on partially completed vessel lying in dock and contract *1028 non-maritime in nature); King v. Pan American World Airways, 270 F.2d 355, 362 (9th Cir.1959) (exclusive remedy provision in California workers' compensation law applied when airline employee who was killed in airline crash on high seas was engaged in non-maritime industry and performed no maritime work), cert. denied, 362 U.S. 928, 80 S.Ct. 753, 4 L.Ed.2d 746 (1960). The nature of a party's employment tends to be non-maritime when it is a matter of purely local concern. See Alaska Packers Ass'n v. Industrial Accident Comm'n, 276 U.S. 467, 468-69, 48 S.Ct. 346, 72 L.Ed. 656 (1928) (employee of cannery injured while pushing stranded boat back into water); Millers' Indemnity Underwriters v. Braud, 270 U.S. 59, 62-64, 46 S.Ct. 194, 195, 70 L.Ed. 470 (1926) (diver suffocated while working in navigable river thirty-five feet from bank).
In asserting that decedents in the present case were not engaged in maritime employment, defendants rely heavily on King v. Pan American World Airways, 270 F.2d at 355, and Stoddard v. Ling-Vought, Inc., 513 F.Supp. 314, 324 (C.D.Cal.1980) (citing King). Defendants' application of these cases, which both involved airplane crashes, is mistaken. In King the Ninth Circuit agreed with the district court that the only aspect of the case which had any maritime flavor whatsoever was the locale of the accident. 270 F.2d at 362. Underscoring the importance of this point is the Supreme Court's subsequent decision in Executive Jet Aviation v. City of Cleveland, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), which dealt specifically with the unique problems posed by aeronautical tort cases and maritime remedies. Partly because of the inherent mobility of aircraft, the Supreme Court rejected the locality test for determining admiralty jurisdiction in such cases. The Court held that airplane accidents are cognizable in admiralty only when the wrong bears a "significant relationship to traditional maritime activity." Id. at 268, 93 S.Ct. at 504.
The effect of Executive Jet, at least in aeronautical cases, has been to simplify the steps for determining whether an exclusivity provision in a state's workers' compensation laws is given full effect. The only relevant inquiry in such cases is now a jurisdictional one. This is apparent in the cases that have applied the Executive Jet test to defeat the application of exclusivity provisions. See Ledoux v. Petroleum Helicopters, Inc., 609 F.2d 824, 824 (5th Cir. 1980) (crash of helicopter at sea); Thibodaux v. Atlantic Richfield Co., 580 F.2d 841, 847 (5th Cir.1978) (sinking of vessel in canal), cert. denied, 442 U.S. 909, 99 S.Ct. 2820, 61 L.Ed.2d 274 (1979).
This simplified test eventually may be applied to a broader variety of cases not involving aeronautical torts. At present, however, the Court concludes that the precise test for applying federal maritime remedies in a non-aeronautical case involving questionable maritime characteristics is clear. After Executive Jet, a claimant must show that the injured party's employment bears a significant relationship to traditional maritime activity.
In the present case most of the decedents were marine scientists. They were engaged in an oceanographic research project as a result of their professional responsibilities. Their destination was an OTEC station in the Pacific Ocean, seventeen miles from the Island of Hawaii and even farther away from their point of departure. Moreover, their boat was specially equipped for the voyage and they were prepared to be at sea for some period of time. Clearly, the circumstances of this case are hardly comparable to that of a carpenter working on a boat in dock, see Grant Smith-Porter Ship Co. v. Rohde, 257 U.S. at 477-78, 42 S.Ct. at 158-159, or of a cannery worker pushing a stranded boat into navigable water, see Alaska Packers Ass'n v. Industrial Accident Comm'n, 276 U.S. at 468-69, 48 S.Ct. at 346.
Defendant UC contends that the decedent Shannon's participation in the project differed from the other decedents' participation, essentially because he was not a marine scientist. It is clear, however, that Shannon was on board the HOLOHOLO either as an assistant or as an observer. Even assuming that Shannon was an observer, *1029 he was participating in the cruise as an employee of UC who was interested in the OTEC project. Apparently, he had participated in two prior cruises and was learning about his possible future duties with the OTEC group. These duties would have involved physical oceanography. In light of these facts, the Court can find no basis for distinguishing between Shannon and the other decedents. Accordingly, the Court concludes that the employment of all the decedents, the circumstances of their deaths, and the purpose of their mission bore a significant relationship to traditional maritime activity.[1]

2. State Sovereignty and the Effect of National League of Cities v. Usery

Defendants also contend that the Supreme Court's ruling in National League of Cities v. Usery, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), requires that the exclusivity provisions in Hawaii's workers' compensation laws be given full effect. Their argument is that the application of federal remedies in this case would create serious financial burdens in contravention of the State's workers' compensation plan, and thereby infringe on integral governmental functions protected by the Tenth Amendment.
The application of federal maritime law would be invalid under Usery only if the State's compliance with the federal law directly impairs its ability to structure integral operations in areas of traditional governmental functions. Hodel v. Virginia Surface Mining Reclamation Ass'n, 452 U.S. 264, 288, 101 S.Ct. 2352, 2366, 69 L.Ed.2d 1 (1981); National League of Cities v. Usery, 426 U.S. at 852, 96 S.Ct. at 2474. The Court need not determine whether conducting oceanographic research or structuring a compensation plan is akin to the traditional governmental function of setting minimum wages and hours which was at issue in Usery. Even if conducting research or structuring a compensation plan qualifies as a traditional governmental function, the application of maritime remedies in this case would not directly impair the State's ability to engage in these activities. At best, the impact would be indirect. See Hamilton v. County of Los Angeles, 131 Cal.App.3d at 995-96, 182 Cal.Rptr. at 877. Moreover, as plaintiffs correctly assert, the Supreme Court expressly limited its holding in Usery to the commerce clause and expressed no opinion as to whether different results might obtain when federal authority derives from another section of the Constitution, such as Article III, section 2, which provides that federal judicial power shall extend to all cases in admiralty. See National League of Cities v. Usery, 426 U.S. at 852, n. 17, 96 S.Ct. at 2474 n. 17.

3. Miscellaneous Issues and Conclusion

Defendants' final argument is that plaintiffs have waived their claims under federal law by pursuing remedies accorded by Hawaii's workers' compensation system. The one case that defendants have cited, Braadt v. City of New York, 260 F.Supp. 826 (1966), appears inapposite. Having found no other authority to support defendants' argument, the Court concludes that plaintiffs have not waived their claims under federal law.
In the alternative, defendants seek dismissal of all of plaintiffs' non-maritime claims. Plaintiffs, however, have responded that all their claims are maritime in nature. In light of defendants' failure to specify any particular non-maritime or pendent state claim brought by plaintiffs, the Court declines at this time to rule on this question.
For the foregoing reasons, the Court concludes that plaintiffs' claims under the Jones Act, DOHSA, and general maritime law are not barred by Hawaii's workers' compensation laws. Accordingly, plaintiffs' Motion for Partial Summary Judgment as *1030 to Workers' Compensation is GRANTED and defendants' Motion for Summary Judgment and/or Dismissal as to All or Part of the Claims of Plaintiffs Harvey, Weaver, Niemeyer and Allen is DENIED.
SO ORDERED.
NOTES
[1] The Court's conclusion about the nature of the decedents' employment relates solely to the question of whether plaintiffs are entitled to federal maritime remedies. It does not relate to the separate question of whether the decedents were "seamen" for purposes of the Jones Act.